BARNEY CORY & others vs. BOYLSTON FIRE AND MARINE INSURANCE COMPANY.

A policy of marine insurance upon champagne wine, valued by the case, contained printed clauses providing that the insurers should not be liable for loss by leakage, unless occasioned by stranding or collision; nor "for damage or injury to goods by dampness, rust, change of flavor, or by being spotted, discolored, musty or mouldy, unless the same be caused by actual contact of sea water with the articles damaged, occasioned by sea perils." A vessel with such wine on board met with severe gales and stress of weather, which prolonged her voyage and caused her to ship much sea water; and upon her arrival at the port of destination all the cases were found to .be more or less wet, either by the sea water, or by the steam and dampness generated in the hold by the presence of the sea water and the changes of climate through which the vessel had passed, some of the bottles, though still corked, partly empty, the cases and their contents heated, and the wine impaired in flavor and merchantable value. *Held,* that the insurers were not liable for the loss of the wine which had escaped from the bottles; nor for injury by dampness or change of flavor to cases with which the sea water had not actually come in contact.

The burden of proving a loss from a cause, and to an amount, for which underwriters are liable, is upon the assured.

In computing a partial loss under a policy of marine insurance, return 'duties are not to be deducted from the amount to which the underwriters are to contribute.

Under the suing and laboring clause in a policy of marine insurance, the underwriters are liable for a proportion of expenses incurred in preserving the property from the operation of the perils insured against, but not of expenses of ascertaining the amount of the loss, or refitting the goods for market.

CONTRACT upon a policy of insurance, dated January 12, 1869, for $100,000 on champagne wine at and from Havre to Boston; ' attaching to first shipments prior to January 1, 1870 ; " " valued as per memorandum on back hereof; " " loss, if any, to be paid .n gold." Writ dated September 4, 1869.

Indorsed upon the policy were various shipments of champagne wine, valued by the case in gold. So much of these indorsements as needs to be stated is copied below :

" Champagne wine valued as follows :

|  | Quarts. | Pints. | |
|---|---|---|---|
| Schreider and Dry Schreider . . | 11 | 12 | |
| Dry Sillery . . . . . . . . | 12 | 13 | per case, |
| Cabinet, Imperial and Verzenay . | 13 | 14 | in gold. |
| Carte Blanche . . . . . . . | 15 | 16 | |

"Jan. 21. Bk. Jenny Ellingwood. | Havre to Boston. | 50,085 | 2¼ | 1252.12 gold. | Paid Feb. 27, 1869."

The material clauses printed upon the face of the policy were as follows : " Touching the adventures and perils which the said insurance company are contented to bear and take upon them in this voyage, they are of the seas, fire, barratry of the master (unless the insured be owner of the vessel) and of the mariners, and all other sea perils and misfortunes, which have or shall come to the damage of the said wine or any part thereof, to which insurers are liable by the rules and customs of insurance in Boston (excepting such losses and misfortunes as are referred to by clauses in this policy); provided, that the insurers shall not be liable for any partial loss on " certain enumerated articles, " unless it amounts to " twenty, ten or seven per cent. respectively ; " nor for leakage of molasses, oil or other articles, unless it be occasioned by stranding or collision with another vessel; nor for any partial loss on other goods, or on the vessel or freight, unless it amounts to five per cent., exclusive, in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss ; but the owners of such goods shall recover on a general average."

" It is further agreed that the insurers shall not be liable for damage or injury to goods by dampness, rust, change of flavor, or by being spotted, discolored, musty or mouldy, unless the same be caused by actual contact of sea water with the articles damaged, occasioned by sea perils."

" And in case of any loss or misfortune, it shall be lawful and necessary for the insured, their factors, servants and assigns. to sue, labor and travel for, in and about the defence, safeguard and recovery of the said wine or any part thereof, without prejudice to this insurance ; and the acts of the insured or insurers, in recovering, saving and preserving the property insured, in case of disaster, shall not be considered a waiver or acceptance of an abandonment; to the charges whereof the said insurance company will contribute in proportion as the sum insured is to the whole sum at risk."

" And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof."

The declaration (annexed to which was a copy of the policy and indorsements) alleged that, in the latter part of January

1869, " four thousand cases and baskets of champagne wine, belonging to the plaintiffs, were placed on board the said barque Jenny Ellingwood at Havre, and the said barque proceeded on her voyage direct from said Havre to Boston, and while proceeding on said voyage was by perils insured against in said policy, and through the dangers of the seas, and the force and violence of the winds and waves and stormy and tempestuous weather, greatly damaged and opened in her seams and rendered leaky in her planks, and shipped and took in great quantities of water, and was caused to pitch and roll and labor, and was tossed about, and in consequence thereof, and by reason of contact with sea water, occasioned thereby, during said voyage, the said cases and baskets, and the contents thereof, and the bottles of wine therein, were broken, wetted, spoiled and damaged, and rendered of little value, whereby the plaintiffs sustained great loss, namely, an average loss of $27,262, gold, upon the market value of said wine ; of all which the defendant corporation had due notice, and received the preliminary and adjusted proof of said loss and of said corporation's proportion thereof, namely, $15,151.11, on the first day of July last past, and were bound by the terms of said policy to pay the same in sixty days thereafter ; and the plaintiffs were also put to great charges and expenses in recovering, saving and preserving the said insured property, to wit, the sum of $1760.59 in legal currency or treasury notes of the United States ; and the said corporation promised and were bound to pay said last named sum of $1760.59 in legal currency ; and the defendant corporation owes the plaintiffs said sums, namely, $15,151.11 in gold, and $1760.59 in legal currency or treasury notes."

Trial in this court, before *Ames*, J., who reserved the case for the determination of the full court upon a report of all the evidence ; which tended to show that the barque Jenny Ellingwood left Havre in a seaworthy condition, with a cargo including four thousand cases of this wine, but met with severe gales and heavy seas, which strained her and caused her to leak and ship much water, prolonged her voyage and impelled her to pursue a more southern course than usual ; that the wine was packed with straw and paper in cases of a dozen quart bottles or two dozen pint

bottles each; that on her arrival in Boston it was found, upon unpacking and examination, that all the cases were more or less wet, either by sea water, or by the steam and dampness generated in the hold by the presence of the sea water and the changes of climate through which the vessel had passed, the labels on the bottles defaced, the coverings of the corks injured, some of the bottles broken, and others partly empty, the cases and their contents heated, and the wine in a high state of fermentation, and impaired in flavor and in merchantable value; that the plaintiffs paid the duties at the custom-house, and received back part thereof on account of such damage; and that the market value of the wine in Boston, in gold, as estimated by appraisers agreed on by the parties, would have been, if uninjured, $89,615, and was, in its damaged condition, $62,352.38, showing a difference of $27,262.62.

The plaintiffs contended that the defendants were liable for such proportion of the sum last named as the amount insured, or $50,085, bore to the whole amount at risk, or $89,615; and admitted that they stood their own insurers for the rest of the loss; and claimed to recover of the defendants, as their proportion of the partial loss, $15,151.11, in gold.

" The defendants' counsel proposed that the case should be reserved for the full court; and stated that they contended there was not evidence to warrant the jury in finding that, by a peril insured against by the policy declared on, there was a loss of five per cent., within the true meaning and legal effect of said policy; nor was the evidence such as would warrant the jury in finding any particular amount of loss, exceeding five per cent., caused by a peril insured against, for which the defendants were liable under the terms of said policy; that the amount of return duties received by the plaintiffs should be deducted from the amount of any loss sustained by them from perils insured against; that in no event could the defendants be liable for more than their proportion of such expenses of examining, repacking and refitting the wine for market, as had reference to preserving the wine from further damage begun by a peril insured against; nor more than a proportion of said expenses, if there had been a loss under the

policy for which the plaintiffs were entitled to recover in said action; and that upon the evidence the defendants were not liable for any part of this claim.

" With consent of the defendants, a verdict was then taken for $16,125.27 in gold, and $1845.93 in legal currency; the amount in gold being the amount of damage to the goods insured as claimed by the plaintiffs; and the amount in legal currency being a nominal sum for the proportion of expenses to be borne by the defendants for examining, repacking and refitting the same for market. If the court shall be of opinion that the jury were warranted in finding a verdict for the plaintiffs for the above sum in gold for the damage to the goods insured, the verdict shall stand for that amount, and for such further amount in legal currency as shall be determined by an assessor, under such instructions in point of law as the court shall think fit to be given; otherwise, the verdict is to be set aside and a new trial granted, with liberty to either party to move the court that the case be sent to an auditor."

*B. R. Curtis & W. Curtis*, for the defendants.

*E. D. Sohier & C. A. Welch*, for the plaintiffs, besides authorities referred to in the opinion, cited *Donnell* v. *Columbian Insurance Co.* 2 Sumner, 366, 380; *Palmer* v. *Warren Insurance Co.* 1 Story, 360, 364; *Hoffman* v. *Ætna Insurance Co.* 32 N. Y. 405; *Woodruff* v. *Commercial Insurance Co.* 2 Hilton, 122, 130; 1 Duer on Ins. 210, 211; 1 Phil. Ins. (3d ed.) § 1129.

GRAY, J. By the general law of insurance, underwriters against perils of the sea and other usual perils do not assume the risk of ordinary perils incident to the course of the voyage, nor of damage arising from intrinsic qualities or defects of the thing insured, including waste from ordinary leakage of liquors. 1 Phil. Ins. §§ 1086, 1089, 1090.

The clause in the policy before us, which provides that the insurers shall not be liable for leakage, unless occasioned by stranding or collision, exempts them from liability for all leakage, ordinary or extraordinary, and from whatever cause, whether gradual or violent in its operation, except those specified. When bottles which have once been filled and corked are found partly

empty, while the bottles are still whole, and the corks in their places, the deficiency, whether called "ullage," or "wantage," or by any other name, can only have arisen from leakage. The defendants therefore are not liable for such deficiency.

Independently of the peculiar provisions of this policy, underwriters are not liable for injury to goods by the ordinary dampness of the hold, though aggravated by the length of the voyage and the variety of climate through which the vessel has passed in consequence of perils of the sea, because such injury is still, if those perils do not otherwise operate upon the goods, attributable to the nature of the goods themselves, and not to the perils of the sea, as the proximate and efficient cause ; but they might have been held liable for injuries occasioned to the goods from an extraordinary formation of steam or gases, arising from an extraordinary access of sea water into the hold by reason of perils of the sea. *Baker* v. *Manufacturers' Insurance Co.* 12 Gray, 603. *Montoya* v. *London Assurance Co.* 6 Exch. 451. *Taylor* v. *Dunbar*, Law Rep. 4 C. P. 206.

In *Baker* v. *Manufacturers' Insurance Co.* 12 Gray, 603, decided by this court in 1851, the facts curiously resembled those in the present case. The policy was upon delicate French goods on a voyage from Havre to Boston. The vessel had an extraordinarily long passage, and met with repeated gales and stormy weather, which drove her south of her usual course, and caused her to ship heavy seas, and to strain and open her seams, but not to leak much. Upon examination of the cargo after arrival, many of the cases appeared to have been wet with salt water; some cases were damp in which there was no indication of salt water, and in some of these the goods were as much damaged as in those that appeared to have been wet; there appeared to be no difference in the nature of the damage, which consisted of discoloration and mould; and some of the witnesses were unable to determine how many of those cases the contents of which were damaged had been wet with salt water. It was held, that the insurers were liable for the damage to the goods, occasioned by their being wet with salt water ; that they were not liable for any damage from the ordinary dampness of the hold, though aggra-

vated by the length and circumstances of the voyage; and that for the goods not found to be actually wet with salt water, but damaged by being spotted and stained, it not being shown whether such damage was occasioned by the ordinary dampness of the hold upon such a voyage, or by an extraordinary formation of steam and gases, occasioned by an extraordinary access of sea water, caused by perils of the sea, the plaintiffs could not recover.

In *Montoya* v. *London Assurance Co.* 6 Exch. 451, decided in the same year by the English court of exchequer, a vessel laden with hides and tobacco encountered much bad weather, and shipped large quantities of sea water, which wet and putrefied the hides, and caused them to ferment, but did not come in actual contact with the tobacco or the packages containing it; but, in consequence of the fetid odor created by the fermentation of the hides, the tobacco was damaged and deteriorated in flavor; and it was held, that the damage thus occasioned to the tobacco was a loss by perils of the sea as the proximate cause.

The provision in the policy in suit, by which " it is agreed that the insurers shall not be liable for damage or injury to goods by dampness, rust, change of flavor, or by being spotted, discolored, musty or mouldy, unless the same be caused by actual contact of sea water with the articles damaged, occasioned by sea perils," was evidently inserted with a knowledge of these two decisions, and with the intention of defining the liability of the insurers under similar circumstances. It expressly limits their liability for damage or injury by dampness, or by change of flavor or such other deterioration in quality as is a common result of dampness, to such effects when caused by actual contact of sea water with the articles damaged, occasioned by sea perils. It is not enough to bring a case within this clause, that perils of the sea should be the efficient, and, within the rule laid down in the previous decisions, the proximate cause, by which the sea water was shipped, which, more or less directly, operates upon and injures the goods; or that the sea water should come in contact with part of the cargo, but it must come into actual contact with the articles, for the damage to which the underwriters are sought to be charged. And we are of opinion that when the goods in question are not

loaded in bulk, but packed in cases separately valued, the insurers are liable for the damage occasioned by dampness or its effects to those packages only, with which the sea water comes into actual contact, and not for the injury resulting from such dampness to other packages not touched by the sea water. It was suggested, though not strongly urged, that this provision must be restricted in its application to solids only, and therefore does not affect this case. But we cannot yield to that suggestion. Change of flavor may occur in liquids as well as in solid articles, and dampness may injure the packages containing the one, and consequently the contents, as well as the other. The champagne being valued by the case, the effect of this clause is, that, so far as the sea water came into actual contact with any case or package, the defendants are liable for any injury occasioned either by such direct contact, or by any heat or dampness thereby generated, to the same package, but not for any injury by dampness or change of flavor to other packages, no part of which had been brought into actual contact with the sea water.

The policy further provides that the insurers shall not be liable for any partial loss, unless it amounts to five per cent., exclusive of charges and expenses incurred in ascertaining and proving the same. And it is well settled that the burden of proving a loss from a cause, and to an amount, for which the insurers are liable, is upon the assured. *Baker* v. *Manufacturers' Insurance Co.* 12 Gray, 603. *Leftwitch* v. *St. Louis Insurance Co.* 5 Louisiana Annual, 706. *Heebner* v. *Eagle Insurance Co.* 10 Gray, 131. *Paddock* v. *Commercial Insurance Co.* 104 Mass. 521.

The loss, as estimated by the appraisers, and for the defendants' proportion of the full amount of which the verdict was returned, was the entire damage, whether from breaking of bottles, emptiness or ullage, or deterioration in quality and merchantable value ; and the evidence did not show how much of this injury was caused by actual contact of sea water with the packages injured, and how much by steam or dampness in the hold, or the inherent qualities or defects of the wine. According to the terms of the report, the verdict must therefore be set aside and a new trial granted.

The return duties, received by the plaintiffs from the custom-house, should not be deducted from the amount to which the insurers are to contribute. All the authorities agree that the underwriters have nothing to do with freight, duties or charges whether the partial loss is made up by reference to the value of the goods on board at the port of destination, or the net proceeds of the sales thereof there, deducting all charges; or by the more usual rule, (which appears to have been assumed in this case,) of taking the market value of the goods after being landed and all freight, duties, truckage, storage and other charges paid, or, in other words, the gross proceeds of sale. In the former alternative, the duties do not enter at all into the computation of the loss. In the latter alternative, they are not computed as a distinct item, but the market value of the goods on shore at the port of destination is assumed as the standard, by the proportion between which and the valuation in the policy the partial loss is to be estimated. It is true that into such market value enter not only the original cost and the freight, but also the duties and other charges of landing, as well as the merchant's profits. But even if the goods should arrive at a falling market, and their gross market price upon a sale in the port of destination would not equal the cost and freight, that price would not the less be the standard of adjustment. It does not affect this standard, and is of no consequence to the insurer, whether the duties have or have not been demanded and paid, or whether a portion of the duties is remitted upon the damaged goods before payment, or, after having been once exacted, is refunded. In either event, the duties, from payment of which the damaged goods have been exempted, do not increase the value of those goods when landed, or diminish the amount of the damage, but only show that by reason of the damage occurring on the voyage this portion of the goods was not rightly liable to duty. *Lewis* v. *Rucker*, 2 Burr. 1167. *Johnson* v. *Sheddon*, Burn on Ins. 154, 167, and 2 East, 581. *Usher* v. *Noble*, 12 East, 639. *Lawrence* v. *New York Insurance Co.* 3 Johns. Cas. 217. 2 Phil. Ins. § 1464. Stevens & Benecke on Average (Am. ed.) 308 *& seq.*, 330 *& seq.* Hopkins on Average (3d ed.) 238 *& seq.*

Under tne suing and laboring clause in the policy, the insurers are liable tor a proportion of any reasonable expenses incurred in ' preserving the subject insured from the operation of the perils in- sured against. *Kidston* v. *Empire Insurance Co.* Law Rep. 1 C. P. 535, and 2 Ib. 357. But they are not liable for expenses of the examination by appraisers for the purpose of ascertaining the amount of the loss, nor for the expenses of refitting the wine for market. As the nominal sum in currency, for which the verdict was returned, included all these, it cannot stand; but it must be referred to an assessor to ascertain what, if any, part of the ex- penses was sustained in preserving any of the cases of wine from further damage by the operation of the sea water which had come into actual contact with them.     *Verdict set aside*