JARVIS C. PERRY, and others, in equity,

*vs.*

WILLIAM T. COBB, and others.

Knox. Opinion February 11, 1896.

</div>

*Insurance,— marine. Perils of the Sea. Proximate Cause. Action. Arbitration. Equity.*

Where the plaintiffs and defendants under articles of association were copartners in insuring each other upon cargoes, *held*; that an action at law cannot be maintained upon such contracts of insurance because the promise is joint and not several and the assured cannot be both plaintiff and defendant. The only remedy is in equity.

A stipulation in such articles of association that the members shall finally determine the amount of any loss is not strictly an arbitration clause so as. to oust courts of their jurisdiction in the matter, but a regulation inter sese that will control except for equitable cause shown.

*Held*; in this case, that insurance is not on the voyage, but for the voyage,. and damage to the cargo from a protracted voyage is not a sea peril.

Upon a bill in equity it appearing that the associates rightly applied the law to the facts of the case and their decision is supported by the evidence that the plaintiffs have no claim beyond the particular average exempted by the terms of the insurance; *also*, that the principal damage to the cargo result-ed from its own inherent qualities excited by the long continued transit, *held*, that the bill be dismissed. .

ON REPORT.

This was a bill in equity, heard on bill, answer and proof, in which the plaintiffs claimed to recover of the Knox Lime Insurance Association upon two contracts of insurance on a cargo of lime shipped at Rockland in February, 1893, on board the Brig, Caroline Gray.

The Knox Lime Insurance Association is a voluntary association, or partnership, of whom the plaintiffs and defendants are the members.

The articles of agreement by which the association is organized, and under which its business is carried on are as follows:

"Knox Lime Insurance Association.

"Mutual agreement of lime manufacturers of Knox county, Maine, for insuring all lime shipped by them, for one year, each kiln to be entitled to one vote.

"Article 1st. A committee of nine to be chosen who shall employ a Secretary or Agent for the Association.

"Article 2nd. All lime shipped under deck to ports within the following three districts to be insured at the rate named.

"First District, Portland, Me., to Cape Cod, one per cent.

"Second District, Cape Cod to Cape Hatteras, two per cent.

"Third District, Cape Hatteras to St. Augustine, Fla., all inclusive, three per cent.

"Article 3d. The parties hereto to deposit with the committee their notes on demand for fifty dollars for each kiln represented, to be used or returned to makers as hereinafter provided; also a deposit of twenty-five dollars in cash for each kiln.

"Article 4th. As soon as the loading of a cargo is completed a report of the same shall at once be returned to the Secretary or Agent at Rockland. The payment of all premiums due shall be promptly made to the Secretary or Agent on the last day of every month, unless funds should sooner be required to pay a loss, in which case any sum due the Association from any member shall be paid when called for by the committee or their representative. The cash deposits to be subject to check signed by the Chairman of Committee and Secretary of Association, but no check to be drawn without a vote of the committee.

"Article 5th. In case a member refuses or neglects to pay the premium due, no further risks to be taken after such refusal or neglect until he pays, and unless paid the committee may proceed to collect so much of his note as may satisfy the claim. No shipment to be covered nor loss paid on lime not returned.

"Article 6th. If a shipper receive notice of a cargo in trouble

he is to notify the secretary or one of the committee in writing, but he, the shipper, to take full charge of the interest, and act for the best interests of all concerned with the advice of the committee or their agent, and when closed, to submit the result to the committee, and they are to determine the amount due, if any, and pay the same at their first regular meeting after the claim for loss is presented, unless the Association has insufficient funds, in which case thirty days time for payment shall be granted. An appeal may be made to a majority of two-thirds of the votes of the Association, whose decision shall be final. Should the losses exceed the premiums collected, then the cash deposits for each kiln to be used, and if insufficient then proceeds of notes, and finally an assessment on each kiln shall be made to pay losses if necessary.

"Article 7th. No risks to be taken, under this agreement, after December 31, 1893, and when the last risk has expired, this to absolutely end the Association, except so far as the committee are concerned, they to close its affairs within thirty days thereafter, by returning the notes to makers, and dividing the cash on hand, if any, in an equitable manner.

"Article 8th. The committee are to fix the value of shipments per cask.

"Article 9th. No risk except on lime under deck shall be taken, and no losses to be paid unless it be five per cent of the whole aggregate value of the cargo under deck, and no general average charges shall be added to particular average to make the amount five per cent.

"Article 10th. The Agent or Secretary with two members of the Committee of Association shall be chosen from Rockland, two from Thomaston, and two from Rockport, to decide upon all shipments in an outside vessel before chartering, and if such vessel is objected to, the shipper to be notified in writing or verbally at once.

"Article 11th. No suit in law shall be begun or maintained by one or more members against any other member or members of this Association, on account, or for any claim growing out of same, except for the collection of the demand notes.

"Article 12th. Any matters not provided for in this agreement shall be left to the committee to adjust and regulate.

"Dated at Rockland, December 31, 1892."

The plaintiff's case was as follows :

The cargo insured consisted of 2566 casks of common lime and 1344 casks of lump lime.

The brig is double-decked with a break of about two feet in the upper deck aft, so that the space between decks aft is about two feet deeper than it is forward.

About 1400 casks of the cargo were shipped between decks, and the balance, about 2500 casks, in the hold under the lower or main deck.

The loading of the vessel was completed February 14th, on which day the bill of lading bears date.

The brig sailed from Rockland, February 17th. On the morning of the 18th she took a severe gale which was followed by a succession of gales in which the brig labored heavily, shipped large quantities of water and was driven a great distance out of her course, and finally, after having been given up for lost, arrived in New York on the 21st day of March.

On arrival the cargo was found to be in a damaged and unmerchantable condition, and was sold for about half the price of merchantable lime at the time of arrival.

The plaintiffs claimed that the damage was caused by perils of the sea, in part by the violent motion and laboring of the vessel, and in part by the action of sea water coming to the cargo causing some portion of the casks to become on fire.

The contract for insurance of the cargo was evidenced by two instruments, one dated February 13, 1893. and the other dated February 15, 1893. By the first instrument the Association insured the plaintiff in the sum of $2464 and by the second in the sum of $84. The policies insured the plaintiffs in the sums named "On lime on board Brig Caroline Gray under deck, at and from Rockland, Maine, to New York." The only condition specified was that "there shall be no claim on the Association unless the particular average amounts to five per cent of the whole aggregate value of the cargo on board ; and no gen-

eral average charges shall be added to particular average to make the amount five per cent.".

The plaintiffs conceded that, under the condition above named, they were not entitled to recover of the defendants unless they prove a partial loss equal to five per cent of the whole aggregate value of the cargo.

Subject to the condition above referred to, the plaintiffs claimed that the policies constituted a general and unlimited insurance of the cargo against the perils of the sea, or, in other words, a general maritime risk.

*W. H. Fogler*, for plaintiffs.

Perils of the sea: *Gage* v. *Tirrell*, 9 Allen, 299-307-308; 1 Phil. Ins. §§ 1042, 1099.

Cause of Damage: 2 Phil. Ins. § 1053. "If the damage can be accounted for by the perils of the sea, it will be presumed to have so happened, unless it is proved to have been caused by culpable misconduct."

The defendants are liable not only for those casks of lime which were in actual contact with sea water, or actually on fire, but also for all damage coming to the remaining portion of the cargo through the immediate effect of such contact with sea water or burning, for all damage of which the water and fire were the proximate cause.

Proximate cause: *Aetna Ins. Co.* v. *Boon*, 95 U. S. 117; *Ins. Co.* v. *Tweed*, 7 Wall. 44; *R. R. Co.* v. *Kellogg*, 94 U. S. 469; *Montoya* v. *London Assurance Co.* 6 Exch. 451; *Cory* v. *Boylston Ins. Co.* 107 Mass. 145; *Neidlinger* v. *Ins. Co. of North America*, 11 Fed. Rep. 514; Hopkins Average, p. 189.

If the inherent tendency is set in operation or made active and destructive by a sea peril, the underwriters are liable for all loss which occurs over and above such loss or damage as would have been suffered but for such a sea peril. 2 Pars. Cont. 374.

The defendants are liable for such loss or damage which came to the cargo by the laboring and pitching of the vessel, in addition to such damage as was occasioned by fire and water. 1 Phil. Ins. § 1090, and cases.

Damages : 2 Phil. Ins. § 1460 ; *Lewis* v. *Rucker*, 2 Burr. 1172.

Remedy : *Stephenson* v. *Piscat. Ins. Co.* 54 Maine, 69-70.

Form of judgment : If apportioned, should be by a master acting under the direction of the court.

*C. E. and A. S. Littlefield, Eugene P. Carver*, of the Boston Bar, with them, for defendants.

Perils : *Parkhurst* v. *Gloucester Mut. Fishing Ins. Co.* 100 Mass. 302 ; *De Grove* v. *Met. Ins. Co.* 61 N. Y. 504 ; *Hartshorn* v. *Union Mut. Ins. Co.* 36 N. Y. 172 ; *Duncan* v. *China Union Mut. Ins. Co.* 129 N. Y. 244 ; *Coit* v. *Commercial Ins. Co.* 7 John. 385 ; *Taunton Copper Co.* v. *Merchants Ins. Co.* 22 Pick. 108 ; 3 Kent's Com. p. 300 ; *Baker* v. *Manuf. Ins. Co.* 12 Gray, 603 ; 1 Parsons on Ins. p. 541 ; *Cory* v. *Boylston Ins. Co* 107 Mass. 140 ; *Libby* v. *Gage*, 14 Allen, 266 ; *Smith* v. *Universal Ins. Co.* 6 Wheat. 176 ; *Jordan* v. *Warren Ins. Co.* 1 Story, 342 ; *Providence Wash. Ins. Co.* v. *Adler*, 65 Md. 162 (S. C. 57 Am. Rep. 314) ; *Taylor* v. *Dunbar*, L. R. 4 C. P. 206 ; *Tatham* v. *Hodgson*, 6 T. R. 656 ; *Snowdon* v. *Guion*, 101 N. Y. 458 ; *Cator* v. *Great Western Ins. Co.* L. R. 8 C. P. 552 ; *Fleming* v. *Marine Ins. Co.* 3 Watts. & S. 144 (S. C. 38 Am. Dec. 747) ; *Chandler* v. *Worcester Mut. Fire Ins. Co.* 3 Cush. 328 ; *Newark*, 1 Blatch. 203 ; *Spence* v. *Union Ins. Co.* L. R. 3 C. P. 427 ; *Everth* v. *Smith*, 2 Maule & S. 278 ; *Montoya* v. *London Assn. Co.* 6 Exch. 451.

Until the committee or a majority of two-thirds of the votes of the Association determine an amount to be due, there is no obligation on the Association to pay anything. *Scott* v. *Avery*, 5 H. L. C. 811 ; *Spackman* v. *Plumstead Board of Works*, 10 App. C. 229 (House of Lords, 1885,) ; *Trodman* v. *Holman*, 1 H. & C. 72 (1862 Exch. Cham.) ; *Elliott* v. *The Royal Exch. Assn. Co.* L. R. 2 Exch. 237 (1867) ; *Collins* v. *Locke*, 4 App. C. 674 (1879, Privy Council) ; *Perkins* v. *U. S. Electric L. Co.* 16 Fed. R. 514 ; *U. S.* v. *Robesan*, 9 Pet. 319 ; *Del. & H. Canal Co.* v. *Pa. Coal Co.* 50 N. Y. 250 ; *Fenlon* v. *Monongahela Nav. Co.* 4 Watts & Serg. 205 ; *Snodgrass* v.

*Davit*, 28 Pennsylvania St. 221 ; *Preble* v. *City of Bangor*, 64 Maine, 115 ; *Edwards* v. *Aberayror Mut. Ship. Ins. Soc.* L. R. 1 Q. B. Div. 563 ; *London Tramway Co.* v. *Bailey*, L. R. 3 Q. B. Div. 217 ; *Fox* v. *The Railroad*, 3 Wall, Jr. 243 ; *White* v. *Middlesex R. R. Co.* 135 Mass. 216 ; *Brown* v. *Leavitt*, 26 Maine, 251 ; *Sonneborn* v. *Laverello*, 2 Hun, (N. Y.) 201 ; *Cushing* v. *Babcock*, 38 Maine, 452.

*Mr. Fogler*, in reply.

There is no stipulation in the articles of association by which the parties agree expressly or impliedly to refer any matters to arbitration. Article six which counsel for defendant treat as containing a stipulation for arbitration, contains no provision to submit any matter to referees or arbitrators. It provides what acts shall be performed by a shipper who claims to have met with a loss for which the association is liable. He is to present his claim first to the committee or their agent ; second, he may appeal from the decision of the committee to a vote of the association. He is obliged merely to present his claim to the parties liable and obtain their action upon his claim. This is a far different thing from arbitration.

But where a contract contains a stipulation for a submission of disputes or disagreements to arbitrators, it is well settled that such a stipulation does not preclude the parties from seeking redress in court.

This court in *Dugan* v. *Thomas*, 79 Maine, 223, says : " Such a clause of arbitration cannot bind parties. The right of free access to courts is inalienable. Parties may by agreement impose conditions precedent with respect to preliminary and collateral matters, such as do not go to the root of the action. And men cannot be compelled, even by their own agreements, to mutually agree upon arbitrators whose duties would, as in this case, get to the root of the principal claim or cause of action, and oust the courts of their jurisdiction."

The doctrine above laid down is fully sustained in this State and in Massachusetts by the following authorities : *Robinson* v. *Georges Ins. Co.* 17 Maine, 131 ; *Hill* v. *More*, 40 Maine, 515-523 ; *Buck* v. *Rich*, 78 Maine, 431-437 ; *Wood* v. *Humphrey*,

114 Mass. 185; *Pearl* v. *Harris*, 121 Mass. 393; *Rowe* v. *Williams*, 97 Mass. 163-165; *Cobb* v. *N. E. Mut. M. Co.* 6 Gray, 192.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WHITEHOUSE, STROUT, JJ.

HASKELL, J. The plaintiffs and the defendants, lime burners in the county of Knox, formed a business company to continue one year for the purpose of insuring each other upon cargoes of lime shipped by them coastwise. The business was to be conducted by a committee of members, who, in case of damage to any cargo underwritten, were to "determine the amount due and pay the same at their first regular meeting after the claim for loss is presented, unless the association has insufficient funds, in which case thirty days' time for payment shall be granted. An appeal may be made to a majority of two-thirds of the votes of the association whose decision shall be final." Each kiln was entitled to one vote. All suits at law between members were prohibited, except on demand notes.

No action at law could be maintained upon any policy, because the promise was to be joint, and not several as in the Lloyd's method, and the assured would become both plaintiff and defendant; so the prohibition against suits at law on policies was but declaratory of the law itself and, therefore, has no significance.

The stipulation in the articles that the association shall finally determine the amount due on any loss, is not strictly an arbitration clause, because it is an agreement inter sese, between associates, and does not purport to submit controversies to disinterested persons. An arbitrator is said to be "a private extraordinary judge, chosen by the parties, who have a matter in dispute, invested with power to decide the same." *Gordon* v. *United States*, 7 Wallace, 194. He should be disinterested, "for no man can lawfully sit as a judge in his own case." *State* v. *Delesdernier*, 2 Fairf. 473; *Friend, appellant*, 53 Maine, 387. "An interest that disqualifies from judicial action may be small, but it must be an interest, direct, definite, and capable

of demonstration; not remote, uncertain, contingent or unsubstantial, or merely speculative or theoretic." *Andover* v. *County Commissioners*, 86 Maine, 185; *Fletcher* v. *Railroad*, 74 Maine, 434; *Jones* v. *Larrabee*, 47 Maine, 474; *Warren* v. *Baxter*, 48 Maine, 193. The duties of an arbitrator are judicial; and while many cases hold that interest, known to the parties, is waived by the submission, it would be going very far to say that the interest of a debtor, who was to determine his own liability, finally, should have been waived by it. But, however that may be, it has been settled law in this State for more than a quarter of a century that an arbitration clause in a contract, ousting the courts of jurisdiction over the liability, is ineffectual for the purpose. *Stephenson* v. *Piscataqua F. & M. Ins. Co.* 54 Maine, 55. That case, like this, was upon a policy of marine insurance, and it was cited with approval in *Buck* v. *Rich*, 78 Maine, 437.

The stipulation in question differs from an arbitration clause in that it is an agreed method of procedure between associates, partners, joint promisors, where the claimant is himself one of them. Viewing it thus, what good reason can be given why they should not be held to their agreed methods of procedure? It is very like the by-laws of a benefit corporation that bind the members to their observance, as a prerequisite to a forum in the courts. *Jeane* v. *Grand Lodge, &c.*, 86 Maine, 434. It is certainly a reasonable requirement, consistent with the purposes of the association, to mutually indemnify each other in the specific transit to market of their manufactured goods, upon equitable conditions. Equity alone has jurisdiction over their matters, because of mixed interests in all controversies that may arise.

No point is made but that the terms of the stipulation have been complied with. The associates considered the plaintiff's claim, after investigation by the committee and a full hearing and decided that he had none. In this proceeding, the decision was in the nature of an award; each associate was an insurer. All participated and determined the whole matter, not effectually,

either as to liability or damages, so as to preclude all judicial investigation; but they did pass upon the whole matter as the very terms of their existence provided they might do; and the question arises, what effect, if any, shall be given to their decision. No suit at law can be maintained. Relief in equity, suited to the conditions of the controversy, is the only remedy. That is never given when equities are balanced, or when a sound judgment may not be moved to interfere. The decision was by all the associates, standing together for a common purpose, men well versed in shipping lime and familiar with precautions necessary for its safe carriage and discharge, and with matters that do or do not injure its quality or value and affect its price in the market. Why, then, should not this method, agreed to by the associates, have such force and effect upon a court of equity as the fairness of the investigation and deliberation of the decision indicate would be safe, work justice and save expensive litigation to the parties, as it was originally intended that it should do? No good reason suggests itself, and some of the rules touching awards may safely apply. The opinion of the court in *Burchell v. Marsh*, 17 How. 349, upon a bill in equity to set aside an award of arbitrators is very instructive. It holds that an honest decision upon a fair hearing should stand, although the court feels that it could have arrived at a better result, for otherwise, it would be the "commencement, not the end of litigation." A judgment of Lord Thurlow is cited in confirmation of the doctrine. *Knox v. Symmonds*, 1 Ves. Jr. 369.

In this cause, the decision of the associates is not an award in the strict sense, but a procedure in an equitable controversy, between joint associates, that determines their rights inter sese, and it should bind them, except for cause shown to the contrary. They were all interested parties, and that fact and the evidence adduced may show a denial of equitable relief that should be given, and it may show the reverse. At any rate, the whole cause may be heard anew to see if any such error or mistake intervenes as should change the result. The relief prayed for is equitable relief, and will be granted or withheld as sound discretion may demand.

The plaintiffs contracted with the association for insurance to the amount of $2548, on a cargo of lime on board ship, under deck, at Rockland for New York. There were no conditions in the contract except that five per cent particular average on the whole value of the cargo was exempted from insurance. The vessel was thirty-six days at sea, an unusually long time for the voyage, occasioned by rough weather, head winds and successive gales. She sailed the fourteenth of February, and arrived the twenty-first of March. She labored heavily and strained somewhat, but arrived tight and with no special damage in the hull, save the loss of a skylight, some sails and a compass box. On the twenty-seventh of March, she was given a berth and broke cargo. Some seventy-five barrels of lime were discharged. About the fourteenth of April, she was moved and began the further discharge of cargo that was all out on the twenty-eighth. A few of the casks may have been stove. A few more showed signs of fire, and a few were bursting from swollen contents. The balance of the cargo was in bad condition in that staves had shrunken and hoops loosened, allowing the lime to sift out and fall through the tiers of barrels to the deck or floor of the hold. No sea water reached the cargo, unless in a few instances when a hatch had been taken off, or when the cabin was flooded once. The damage from sea water must have been very slight, and did not affect the cargo beyond the few barrels that it touched.

The insurance was against perils of the sea for a particular voyage. A voyage policy does not attach unless the vessel be sea-worthy at the inception of the voyage, which is presumed, but may be rebutted. *Dodge* v. *Ins. Co.* 85 Maine, 215; *Hutchins* v. *Ford*, 82 Maine, 370. It is so whether the insurance be upon the ship, or upon the cargo, or upon freight. *Van Wickle* v. *Mechanics Ins. Co.* 97 N. Y. 350; *Higgie* v. *American Lloyds*, 14 Fed. Rep. 143; *Higgie* v. *National Lloyds*, 11 Biss. 395; *Daniels* v. *Harris*, L. R. 10 C. P. 1. "She must not be overloaded and the cargo must not be badly stowed." Arnould, 649.

In this cause, the insurance was "at and from Rockland to New York," meaning until safely landed in New York, or for a reasonable time to land there under the usages of

that port. The sea risk continued until the goods might be put on shore by reasonable dispatch. On the sixth day after arrival the vessel was given a berth at the wharf and the hatches were opened. No damage to the cargo is claimed after that time, and no point is made that the insurance ended before. During the voyage the decks had been awash, and the cabin once flooded. Some sea water found its way to the cargo and may have caused the bursting of a few casks, and the scorching of a few more, but this damage was far below the particular average, or in this instance partial loss, that had been excepted from the insurance, so that the remaining loss or damage was from the shrinking of the staves of the barrels, and slacking up of the cooperage, allowing their contents to sift out and fall through the tiers of barrels to the deck or floor of the hold, and leaving the barrels so tender that they could not easily be hoisted out of the hatch without danger of falling to pieces. This condition is claimed to have resulted from the rolling and pitching of the vessel caused by the storms and bad weather of an unusually protracted voyage; and the question is, was it caused by a peril of the sea?

Tempests and rough weather are common incidents in sea transit. How long a voyage may continue is beyond the power of prophecy to foretell at the inception of it. Fair winds may serve or head winds may drive the vessel off her course. The voyage policy continues until the port of discharge shall have been reached, and, if upon goods, until they may have been safely landed. If the goods be of a perishable nature, and decay from a protracted voyage before they can be landed, the loss would not be from a peril of the sea. If the cargo be shaken and stove from the inherent weakness of the packages unsuited to withstand the roughness of sea transit, or caused by the effect of their contents during the voyage, it would not be from a sea peril, but from natural causes produced either by the fault of the shipper or by the inherent nature of the goods. The condition of the cargo when landed does not raise the inference that its injury resulted from a sea peril, but the burden rests upon the plaintiff to prove the fact.

No case has been cited at the bar that brings this loss within the hazard underwritten. *Insurance Co.* v. *Boon*, 95 U. S. 117, is a suit upon a fire policy on goods ashore. So is *Insurance Co.* v. *Tweed*, 7 Wall. 44. So is *Railway Co.* v. *Kellogg*, 94 U. S. 469. *Montoya* v. *London Assurance Co.* 6 Excheq. 451, is upon a marine policy on tobacco shipped with hides. Sea water caused the hides to putrify and injure the tobacco, and it was held a sea peril; but the damage by sea water in the cause at bar did no mischief to the bulk of the cargo, and none resulted from the small part injured. In *Cory* v. *Boylston Ins. Co.* 107 Mass. 140, it is held that underwriters "do not assume the risk of ordinary perils incident to the course of the voyage, nor of damage arising from intrinsic qualities or defects of the thing insured," nor of "ordinary dampness of the hold, though aggravated by the length of the voyage and the variety of climate through which the vessel has passed in consequence of perils of the sea," because the result is attributable to the goods themselves and not to sea perils as the proximate cause. In *Neidlinger* v. *Ins. Co. of North America*, 11 Fed. Rep. 514, the policy was upon barley with a clause excepting damage from must or mold, unless from actual contact with sea water, and the hazard was limited to that part of the barley actually wetted. *Taylor* v. *Dunbar*, L. R. 4 C. P. 206, holds that the decay of meat during a voyage protracted by tempestuous weather is not within the terms of a marine policy. In *Boyd* v. *Dubois*, 3 Camp. 133, Lord Ellenborough said: "If the hemp was put on board in a state liable to effervesce, and did effervesce and generate the fire which consumed it, upon the common principles of insurance law, the assured cannot recover for a loss which he, himself, has occasioned." *Crofts* v. *Marshall*, 7 C. & P. 646, is an insurance of thirty-six casks of oil, and the cargo not having shifted, a part of them were found empty and others had lost a part of their contents. The jury disagreed as to whether the leakage was from perils of the sea, and the court gave judgment for defendant by consent. These are all the cases cited by the plaintiffs.

The general rule is that everything which happens through

the inherent vice of the thing, or by the act of the owners, master or merchant shipper, shall not be reputed a peril, if not otherwise borne on the policy. Emerigon, 290; *Providence Washington Ins. Co.* v. *Adler*, 65 Md. 162; *Baldwin* v. *London C. & D. Railway Co.* L. R. 9 Q. B. 582; *Baker* v. *Insurance Co.* 12 Gray, 603; *Cory* v. *Boylston Ins. Co.* 107 Mass. 140; *Boyd* v. *Dubois*, 3 Camp. 133. If the inherent vice be stimulated by a protracted voyage, it is still no loss from a peril of the sea. *Cory* v. *Boylston Ins. Co.* supra; *Taylor* v. *Dunbar*, L. R. 4 C. P. 206. So it is if the loss be from some other intervening cause, as where slaves die from starvation from the failure of provisions during an unusually long voyage, occasioned by bad weather. *Tatham* v. *Hodgson*, 6 D. & E. 307.

Lord Ellenborough in *Cullen* v. *Butler*, 5 M. & Sel. 461, distinguishes between perils on the seas and perils of the seas. Lord Herschell says the latter phrase "does not cover every accident or casualty which may happen to the subject matter of the insurance on the sea. It must be a peril of the sea." . . . "There must be some casualty, something that could not be foreseen as one of the necessary incidents of the adventure. The purpose of the policy is to secure an indemnity against accidents which may happen, not against accidents which must happen." *The Xantho*, L. R. 12 App. 503.

It is not always easy to mark the line between the ordinary operation of the elements and their perilous action. The latter must be the proximate cause of the loss. Lord Bacon's reason is: " It were infinite for the law to consider the causes of causes, and their impulsions one on another; therefore it contenteth itself with the immediate cause." Gow on Insurance, §§ 92, 137.

In applying this rule to the cause at bar, the only direct damage to the cargo clearly shown is that resulting from the contact with sea water, amounting to less than the particular average excepted. The remaining damage to the cargo is not shown to have resulted but from the unexpectedly long voyage, that may have excited the internal qualities of the goods, causing the packages to shrink and scatter their contents so as to need

cooperage before they could be safely raised through the hatch. All authorities agree that a protracted voyage is not a sea peril within a marine policy, because it is not an unusual event, but one of the natural incidents to sea transit. Insurance is not on the voyage but for the voyage. *Pole* v. *Fitzgerald*, Willes, 644. If damage to the cargo resulted from its inherent vice that worked the mischief under natural conditions, it was not a sea peril. Had the voyage been performed in a week, such results would not have been expected. The evidence is conflicting as to the proximate cause for the condition of the cargo upon its arrival. The associates, to whom it was agreed to submit the question of liability, are men of large experience in burning and shipping lime. They are all fair men and appear to have heard the controversy with patience, and, after full investigation, all but the plaintiff agreed that he had no claim, and so decided. Their decision must have great weight upon the fact as to whether the condition of. the cargo, upon its arrival in New York, was other than what might have been expected from ordinary sea weather at that time of year, February and March, during a voyage of thirty-six days, without any unusual sea peril. The cargo arrived all in position. It had not shifted or been knocked to pieces by the vessel having been thrown on her beam-ends, or wrecked or stranded.

But it may be said that the damage within the particular average clause, gave the cargo a bad reputation and thereby lessened its market value ; this result might be, and yet not be within the terms of the policy. Benneke, 438. No case is cited that holds such doctrine ; on the contrary, *Cator* v. *The Great Western Ins. Co. of New York*, L. R. 8 C. P. 552, holds the reverse. That was insurance upon packages of tea. Some were damaged and others were not, but the damage was restricted to the former, although there was a clause in the policy excepting damage other than by contact with sea water. The court held the rule would be the same without the clause, for insurance covers actual damage, and not suspicion of damage. *Montoya* v. *Royal Exchange Ins. Co.* 6 Ex. 451, supra,

comes the nearest to an authority for the contention; but there the tobacco was actually injured from the fumes of the putrefying hides. So in *Lawrence* v. *Aberdein*, 5 B. & A. 107, approved in *Gabay* v. *Lloyd*, 3 B. & C. 793.

The plaintiffs were compelled to pay damages for delay in discharging cargo, and claim that as an element of damages. But, if all the damage to cargo was less than the particular average excepted, so that no liability on account of cargo attached to the underwriters, it would be singular to hold them for the plaintiffs' fault in delaying to seasonably unlade their cargo.

The decision of the association weighs heavily in determining this cause, especially as the evidence warrants the result arrived at upon the application of the law of the case. There is conflict of testimony and the association heard and considered it all, and all its members were practical men in the handling of lime and knew its peculiar qualities and dangers, and they must have considered that the principal damage to the cargo came from its own inherent qualities, excited by the long continued transit.

*Bill dismissed with costs.*