LANASA FRUIT STEAMSHIP & IMPORT-
ING CO., Inc., v. UNIVERSAL INS. CO.

No. 4136.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1937.

See, also (D.C.) 16 F.Supp. 912.

George Forbes and Henry L. Wortche, both of Baltimore, Md., for appellant.

Southgate L. Morison and Frank B. Ober, both of Baltimore, Md. (Bigham, Englar, Jones & Houston and Martin Detels, all of New York City, and Ritchie, Janney, Ober & Williams, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for the defendant in an action on a policy of marine insurance. The declaration set forth the policy and alleged the loss of a cargo of bananas as covered thereby. Defendant filed four pleas, the first two pleading the general issue, and the others being special pleas which set up as precluding the right of recovery one of the clauses of the policy and the cancellation of a certain rider which had been attached thereto. Plaintiff demurred to the special pleas and upon the hearing of the demurrer conceded that its right to recover depended upon the court's construction of the policy. The court, after overruling the demurrer as to one of the pleas and sustaining it as

to the other, entered judgment for the defendant on the pleadings; and the plaintiff has appealed from that judgment. The facts disclosed by the pleadings are as follows:

On June 23, 1933, the Universal Insurance Company issued to the Lanasa Fruit Steamship & Importing Company a floating policy of marine insurance, covering in the sum of $35,000 shipments of fruit from the West Indies to the United States. For this policy a premium of 25 cents on the $100 of risk was charged. The general coverage clause [1] embraced perils of the seas; but a subsequent clause limited liability with respect to fruits and "other articles that are perishable in their own nature" to cases involving total loss or general average. [2] This was modified by rider containing provisions with respect to fruit which provided coverage for particular average, or partial loss, in case of stranding. [3]

On April 4, 1934, for an additional premium of 35 cents, the company added a rider to the policy providing that it should be free of particular average unless the vessel were stranded, sunk, burned, on fire, or in collision, in any of which events there should be liability "for such loss by decay, injury or damage to the fruit as is occasioned thereby or occurs during or in consequence of delay resulting therefrom." [4] On June 25, 1935 this rider was cancelled and the rate on the policy was reduced from 60 cents to 25 cents.

In July, 1935, the Norwegian steamship Smaragd, loaded with bananas belonging to plaintiff and covered by the policy sued on, was stranded while coming up Chesapeake Bay. Before she could be floated, the bananas became overripe and rotted, resulting in a total loss of the cargo; and this action has been instituted to recover under the policy for the loss sustained. The only question in the case is whether this loss is covered by the policy. The contention of plaintiff is that it is covered since it resulted from stranding which, as a peril of the sea, is embraced in the coverage. The contention of the defendant is that it is not covered as it re-

[1] Touching the adventures and perils which the said Universal Insurance Company is contented to bear, and take upon itself, in this voyage, they are of the seas, men-of-war, fires, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes, or people, of what nation, condition or quality soever, barratry of the Master and Mariners, and all other perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of the said goods and merchandises, or any part thereof.

[2] It is also agreed that bar, bundle, rod, hoop and sheet iron, wire of all kinds, tin plates, steel, madder, sumac, wickerware and willow (manufactured or otherwise), salt, grain of all kinds, tobacco, Indian Meal, fruits (whether preserved or otherwise), cheese, dry fish, hay, vegetables and roots, rags, hempen yarn, bags, cotton bagging and other articles used for bags and bagging, pleasure carriages, household furniture, skins and hides, musical instruments, looking glasses, and all other articles that are perishable in their own nature, are warranted by the assured free from average, unless general; * * *.

[3] Special conditions under deck: Warranted free from particular average unless the vessel or craft be stranded, sunk, burnt, but the assurers are to pay the insured value of any package or packages which may be totally lost in loading transshipment or discharge, also any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyances with any external substance (ice included) other than water, or to discharge of cargo at a port of distress, also to pay landing, warehousing, forwarding and special charges, if incurred. * * * Shipments on deck to be insured: Free of particular average unless caused by the vessel being stranded, sunk, burnt, on fire, or in collision, but including jettison and/or washing overboard, irrespective of percentage.

[4] The whole of the clause is as follows: Free of particular average unless the vessel be stranded, sunk, burned, on fire or in collision, if any, all or several of which events the insurers are liable for such loss by decay, injury or damage to the fruit as is occasioned thereby or occurs during or in consequence of delay resulting therefrom. Insurers are liable also for such loss in consequence of delay resulting from any, all or several of the following causes; i. e. breakage of shaft, loss of blades from propeller, derangement or breakage of machinery, derangement or breakage of rudder and/or sternpost, whether or not the vessel be stranded, sunk, burned, or in collision, provided that in all cases the loss amounts to 10% after deducting 5% for ordinary loss.

sulted, not from stranding, but from delay incident thereto and that the intention that loss resulting from such delay should not be covered is shown by the act of the parties in affixing and subsequently canceling the rider relating to loss from delay. The judge below based his decision for defendant upon the presumed intention of the parties as evidenced by their conduct in affixing and canceling this rider.

██ There can be no doubt but that stranding is one of the marine perils covered by the policy. Richelieu, etc., Nav. Co. v. Boston Marine Ins. Co., 136 U.S. 408, 421, 10 S.Ct. 934, 34 L.Ed. 398; Liverpool, etc., Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 438, 9 S.Ct. 469, 32 L.Ed. 788. And this is expressly recognized in the quoted warranties against particular average in which loss from stranding is excepted. The question, however, is not whether the policy covers loss and damage due to stranding, but whether it covers damage due to the decay of cargo where stranding did not cause the decay but merely the delay in voyage which was the occasion for the decay resulting from the inherent nature of the cargo. This question is to be answered, not in the light of the logic which courts might employ in dealing with such questions as liability of the vessel for negligence in stowage [cf. Toyo Kisen Kabushiki Kaisha v. Wellman (The Nichiyo Maru) (C.C.A.) 89 F.(2d) 539, this day decided], but in the light of the construction which has been given to "an ancient form of words which always have been taken in a narrow sense." Queen Ins. Co. of America v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 493, 44 S.Ct. 175, 177, 68 L.Ed. 402. And the answer is found by the courts in the application of two well-settled rules, one that the underwriters take no risk with respect to the retardation of the voyage nor its interruption by the perils insured against (Jordan v. Warren Ins. Co., Fed. Cas. No. 7,524, 1 Story, 342; 38 C.J. 1097), and the other that the proximate and not the remote cause of the loss is to be considered, the latter rule being applied with greater strictness in the case of marine insurance than in other cases. Arnould on Marine Insurance and Average (10th Ed.) vol. 2, § 818. The resulting rule is thus stated in 38 C.J. 1097: "Insurer in general takes no risk with regard to the length or retardation of the voyage by the perils insured against, nor to its interrup-

tion, if it is resumed or capable of being resumed; as in the case of an embargo, or where the master is detained in port by a prosecution against him for a supposed violation of law, or where he remains to prosecute a suit for collision, or where a cargo insured is sunk and raised uninjured after considerable delay and is sold for a less price owing to the delay, or where a cargo of meat, fruit, or other perishable goods is injured by the delay, or a collision causes delay for repairs."

The leading English case dealing with the question is Taylor v. Dunbar, 4 L.R. 206, decided in 1869, wherein it was held that there was no liability under a marine policy for damage to meat resulting from delay due to tempestuous weather. Keating, J., said: "The facts stated in the case show beyond a doubt that the proximate cause of the loss of the meat was the delay in the prosecution of the voyage. That delay was occasioned by tempestuous weather; but no case that I am aware of has held that a loss by the unexpected duration of the voyage, though that be caused by perils of the sea, entitles the assured to recover on a policy like this." Montague Smith, J., said: "To render the underwriter liable, it must be shown that the loss is proximately due to one of the known perils. Retardation or delay of the voyage is not one of them." Brett, J., said: "Such damage must have occurred many times, and yet no trace is to be found of such a claim being maintained. If it be desired, a clause may easily be inserted in the policy to meet the case."

In another English case much cited, Pink v. Fleming, 25 L.R. 396, decided by the Court of Queen's Bench in 1890, it was held that there was no liability under such a policy for damage to fruit from delay due to collision. Lord Esher, M. R., said: "It is well settled that by the law of England there is a distinction in this respect between cases of marine insurance and those of other liabilities. In cases of marine insurance the liability of the underwriters depends upon the proximate cause of the loss. In the case of an action for damages on an ordinary contract, the defendant may be liable for damage, of which the breach is an efficient cause or causa causans; but in cases of marine insurance only the causa proxima can be regarded." Lord Justice Lindley said: "It has long been the settled rule of English law with regard to marine insurance

that only the causa proxima or immediate cause of the loss must be regarded. The rule is well known, and people must be taken to have contracted on that footing." Lord Justice Bowen said: "Whether we consider the damage occasioned by the delay or that occasioned by the handling of the fruit, the same principle appears to apply. The proximate cause of the loss was not the collision or any peril of the sea. It was the perishable character of the articles combined with the handling in the one case and the delay in the other." While Lord Esher used language in his opinion to the effect that the cause last in point of time should be regarded as proximate, which cannot be supported, there has been no question as to the correctness of the rule laid down in the language quoted or of its application to cases of this character.

Other English authorities laying down the same rule are Imerson Steamship Co. v. Bischoff, 7 L.R. 670, holding that loss of freight resulting from the exercise of a power of mulct or abatement because of delay caused by a peril of the sea was not covered by the policy, and Totham v. Hodges, 6 T.R. 656, holding that death of slaves for lack of provisions due to delay caused by bad weather was not covered. The rule was codified in the Marine Insurance Act of 1906, Sec. 55(2) (b), as follows: "Unless the policy otherwise provides, the insurer on ship or goods is not liable for any loss proximately caused by delay, although the delay be caused by a peril insured against."

In this country, Taylor v. Dunbar has been followed in Cory v. Boylston Fire & Marine Ins. Co., 107 Mass. 140, 9 Am.Rep. 14, and in Perry v. Cobb, 88 Me. 435, 34 A. 278, 281, 49 L.R.A. 389. In the first of these cases, in which the opinion was written by Mr. Justice Gray, it was held that there could be no recovery for injury to goods by the ordinary dampness of the hold, though aggravated by the length of the voyage and the variety of the climate through which the vessel had passed in consequence of perils of the sea, "because such injury is still, if those perils do not otherwise operate upon the goods, attributable to the nature of the goods themselves, and not to the perils of the sea, as the proximate and efficient cause." In the second, it was held that there could be no recovery for that part of the damage to a cargo of lime which was attributable to

prolongation of the voyage, although this was due to perils of the sea, the court saying: "The general rule is that everything which happens through the inherent vice of the thing, or by the act of the owners, master, or merchant shipper, shall not be reputed a peril, if not otherwise borne on the policy. * * * If the inherent vice be stimulated by a protracted voyage, it is still no loss from a peril of the sea." The same holding as to decay of perishable goods being attributable to the vice of the goods and not to marine perils causing delay was made. in general average cases by Mr. Justice Grier in Bond v. Superb, 3 Fed.Cas. p. 845, No. 1,624, 1 Wall.Jr. 355, and by Judge Woolsey in The Casey (D.C.) 39 F.(2d) 136, at page 138. In the case last cited the learned Judge said: "It may be alleged, as it is in this libel, that the deterioration of the cargo was due to the delay at the port of refuge, but all men know that delay does not cause decay, although it may be the occasion owing to which decay occurs."

It must be conceded that a number of American cases have not followed the English rule, a fact to which Lord Esher adverted in Pink v. Fleming, supra. Thus in Williams v. Smith, 2 Caines (N.Y.) 1, 2 Am.Dec. 209, it was held that there was liability for deterioration of cargo resulting from delay caused at a port of necessity into which the vessel had been driven and in which she was detained by blockade and pestilence. In Tudor v. New England Mut. Marine Ins. Co., 12 Cush. (Mass.) 554, it was held that there was liability for a cargo of ice which was sold at a loss because a vessel was driven by perils of the sea into a port for repairs and the nature of the cargo, which would not permit of delay, made such action necessary. And in Brandyce v. United States Lloyds, Inc. (The Corsicana), 207 App.Div. 665, 203 N.Y.S. 10, 14, 1924 A.M.C. 365, affirmed per curiam 239 N.Y. 573, 147 N.E. 201, the principal case upon which plaintiff relies, it was held that there was liability for loss sustained with respect to a cargo of potatoes which had begun to rot as a result of delay when the vessel in which they were being carried was driven into the port of Charleston for repairs. That case, however, while drawing distinctions which it is not necessary here to elaborate, approved the rule that "if the inherent vice of the article shipped is stimulated by a protracted voyage, it is still no loss from a peril of the sea." Magoun v.

New England Marine Ins. Co., 16 Fed.Cas. p. 483, No. 8,961, 1 Story, 157, another case upon which plaintiff relies, throws little light on the question before us, as the loss there involved arose out of a restraint by government and the question was as to whether there was a total loss. And Firemen's Fund Ins. Co. v. Trojan Powder Co. (C.C.A.9th) 253 F. 305, involved not a loss due to delay, but liability for a "particular charge" incurred in forwarding cargo of a stranded vessel to its destination, the holding being that the stranding was the proximate cause of the incurring of this extra expense.

■ Counsel for plaintiff candidly admit that the English rule precludes liability in this case; and, the state of the authorities being what it is in this country and there being no contrary decision by the Supreme Court or any federal court, we feel that the English rule should be followed, as in cases of marine insurance it is highly desirable that our decisions be kept in harmony with those of England, "the great field of this business." Queen Ins. Co. of America v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 493, 44 S.Ct. 175, 177, 68 L.Ed. 402; The Eliza Lines, 199 U.S. 119, 128, 26 S.Ct. 8, 50 L.Ed. 115, 4 Ann.Cas. 406; Ætna Ins. Co. v. Houston Oil & Transport Co. (C.C.A.5th) 49 F. (2d) 121, 124; New York & Oriental S. S. Co. v. Automobile Ins. Co. (C.C.A.2d) 37 F.(2d) 461, 463. Plaintiff argues that the decisions of the New York courts should be followed in interpreting the contract because it was made in that state. Assuming the fact to be as stated, although this does not clearly appear from the record, the conclusion does not follow; for it is well settled that, in the interpretation of contracts of insurance the federal courts, in the absence of statute, follow the general law and are not bound by state decisions. Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U.S. 1, 21 S.Ct. 1, 5, 45 L.Ed. 49; Ætna Life Ins. Co. v. Moore, 231 U.S. 543, 559, 34 S.Ct. 186, 58 L.Ed. 356; New York Life Ins. Co. v. Yerys (C.C.A.4th) 80 F.(2d) 264, 265; Walters v. Mutual Life Ins. Co. (C. C.A.4th) 64 F.(2d) 178; Niagara Fire Ins. Co. v. Raleigh Hardware Co. (C.C.A.4th) 62 F.(2d) 705; Fountain & Herrington v. Mutual Life Ins. Co. (C.C.A.4th) 55 F. (2d) 120, 124; Ætna Ins. Co. v. Houston Oil & Transport Co. (C.C.A.5th) 49 F.(2d) 121, 124; Hawkeye Com. Men's Ass'n v. Christy (C.C.A.8th) 294 F. 208, 211, 40 A.L.R. 46; Travelers' Ins. Co. v. Thorne (C.C.A.1st) 180 F. 82, 38 L.R.A.(N.S.) 626; MacKelvie v. Mutual Benefit Life Ins. Co. (C.C.A.2d) 287 F. 660. In the case first cited, which involved a policy of marine insurance executed in Massachusetts, the Supreme Court, speaking through Chief Justice Fuller, said: "It is said that a different rule has been laid down in Massachusetts by the supreme judicial court of that commonwealth. Kettell v. Alliance Ins. Co., 10 Gray, 144; Mayo v. India Mut. Ins. Co., 152 Mass. 172, 25 N. E. 80, 9 L.R.A. 831 [23 Am.St.Rep. 814]. Even if this were absolutely so we should not feel constrained, though regretting the difference of opinion, to depart from our own rule. The policy was a Massachusetts contract, it is true, but its construction depended on questions of general commercial law, in respect of which the courts of the United States are at liberty to exercise their own judgment, and are not bound to accept the state decisions as in matters of purely local law."

■ The fact that the rider, subsequently canceled, covering loss and damage from delay was affixed to the policy, shows that the parties placed the same interpretation upon the general coverage clause of the policy which we have placed upon it, and that plaintiff was willing to pay an additional premium greater than the original premium for protection against such loss and damage. Plaintiff argues that the rider embraced causes for delay in addition to the marine perils against which the policy insured. This is true, but the fact that the rider covered also loss due to delay from those perils is strong proof that the parties did not interpret the policy without the rider as covering such loss. The argument, advanced at the hearing, that the rider was to cover partial loss, is without point since under the policy without the rider plaintiff was insured against partial loss as well as against total loss caused by stranding, but, as we have seen, not against loss from delay incident to stranding. If, therefore, we thought there were any doubt as to the interpretation to be placed upon the policy, we should think, as did the judge below, that the construction which the parties themselves placed upon it would determine the question involved against plaintiff's contention. Brooklyn Life Ins. Co. v. Dutcher, 95 U. S. 269, 273, 24 L.Ed. 410; Williston on Contracts, § 623.

We agree with the lower court that the clause [5] of the policy relied on by the fourth special plea has nothing to do with the case. Cory v. Boylston Fire & Marine Ins. Co., supra, 107 Mass. 140, 9 Am. Rep. 14, 19.

For the reasons stated, the judgment for defendant will be affirmed.

Affirmed.

---

[5] That clause is as follows: "It is warranted by the assured, free from damage or injury from dampness, change of flavor or being spotted, discolored, musty or mouldy, except caused by actual contact of sea water with the articles damaged, occasioned by sea perils."

