CLARENCE E. MAYO & another *vs.* INDIA MUTUAL
INSURANCE COMPANY.

Suffolk.    March 14, 1890. — September 4, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Marine Insurance — Constructive Total Loss — " Free of Partial Loss."*

A policy of marine insurance on a cargo of fertilizer " free of partial loss " covers a constructive total loss based on damage exceeding one half the insured value from perils insured against, and an abandonment, although the cargo subsequently arrives at the port of discharge *in specie* and very little diminished in quantity.

CONTRACT upon a policy of insurance, dated March 5, 1888, against perils of the seas, whereby the defendant insured the plaintiffs for $3,100, on "fertilizer on board schooner Luta Price at and from Boston to St. Andrews, N. B., free of partial loss." Trial in the Superior Court, before *Staples*, J., who reported the case for the determination of this court, which report, so far as material to the point decided, was as follows.

The policy contained, among other printed clauses, the proviso that the insurers should not be liable "for any partial loss on salt, grain, peas, beans, fish, fruit, whether preserved or otherwise, hides, hops, vegetables, or other goods that are esteemed perishable in their own nature, or on the freight thereon, unless it amounts to seven per cent on the whole aggregate value of such articles, and happen by stranding." The vessel went ashore by reason of perils of the seas, on a ledge of rocks near Bliss Harbor, Maine, on the evening of March 18, 1888, and, coming off the ledge early the next morning, sank in eight or nine fathoms of water with the cargo on board. After remaining there about twelve days, she was raised, on or about March 31, 1888, under the direction of the master, and beached near the place of stranding. The cargo, which was but little diminished in quantity, though much depreciated in value, was then transferred to a lighter, and landed at St. Andrews on April 17, 1888, at a cost of $1,881.03. The plaintiffs declined, though duly notified, to receive the fertilizer, or to pay the duties upon it, on the ground that they were entitled to recover the full amount of the policy from the defendant. The customs authorities thereupon took possession of the cargo, and took it to St. John, and there sold it for non-payment of duties for $1,045.91. The expenses of transportation to St. John, and of the sale, amounted to $319.43, and the duties amounted to $214.70, which being deducted from the gross proceeds left $511.78 as the net proceeds of the sale.

On the issue of an abandonment, the jury found for the plaintiffs, fixing the time thereof as of March 24, 1888. The judge thereupon ordered a verdict for the plaintiffs for the amount of the policy and interest, and reported the case for the determination of this court. If the ruling was wrong, the verdict was to be set aside and a new trial ordered; otherwise, the verdict was to stand.

*E. P. Carver*, for the plaintiffs.

*F. Dodge*, for the defendant.

W. ALLEN, J. The cargo, consisting entirely of fertilizer, arrived at the port of discharge *in specie*, almost undiminished in quantity, and of substantial though greatly diminished value. If the risk continued to that time, there was not a total loss. *Forbes v. Manufacturers' Ins. Co.* 1 Gray, 371. The plaintiffs' conten-

tion is, that the risk had been terminated by a constructive total loss and abandonment. It was agreed that there had been a loss from the perils insured against of over fifty per cent of the value of the cargo, and the jury found that the cargo had been abandoned by the plaintiffs to the underwriters on account of the loss. It is not denied that these facts would show a total loss under a general insurance, but it is claimed that the insertion in the policy, in the case at bar, of the words "free of partial loss" changes the character of a total loss under the policy, so that there can be no recovery for a constructive total loss, but only for the actual total destruction of the thing insured.

It was decided in *Heebner* v. *Eagle Ins. Co.* 10 Gray, 131, that an insurance upon a ship against "total loss only" covered a constructive total loss. The same decision was made in regard to an insurance against total loss only on a vessel and outfits in *Greene* v. *Pacific Ins. Co.* 9 Allen, 217. In *Burnham* v. *Boston Marine Ins. Co.* 139 Mass. 399, it was held that there was a constructive total loss of "advances" insured free from average by the constructive total loss of the catch of a fishing vessel. *Kettell* v. *Alliance Ins. Co.* 10 Gray, 144, is very much like the case at bar. There part of a cargo consisting of tin plates was insured, "partial loss excepted." Chief Justice Shaw says : "We can have no doubt that by the true construction of this clause the insurers were not to be liable for loss on tin plates, unless such loss, estimated according to the rules and usages of Boston, should amount to a total loss. . . . What then is the extent of this exception? The natural construction is, that it leaves the insurer liable for all total losses; but it makes no distinction between absolute and constructive total losses; and in case of a constructive total loss, which gives the assured a right to abandon, and he exercises the right, it becomes a legal total loss, as if absolute in its nature. The clause in the contract gives no intimation that it is any particular kind of total loss, whether absolute or technical; it simply excludes all kind of liability for a partial loss. By the natural construction of these provisions, it would seem that if the goods insured were placed by one of the perils insured against in that situation in which the assured has a right to abandon, and he does abandon, he has sustained a total loss, not within the exception." This case is

cited in *Pierce* v. *Columbian Ins. Co.* 14 Allen, 320, where Mr. Justice Gray says: " And by the American law, if goods other than memorandum articles are injured by perils of the sea to more than half their value, it is a constructive total loss, and authorizes an immediate abandonment and recovery against the insurers."

It is argued that the fertilizer insured should be treated as if included in the common memorandum clause, and that memorandum articles are not subject to constructive total loss and abandonment. We cannot admit either proposition. The distinction between tin plates and memorandum articles was considered in *Kettell* v. *Alliance Ins. Co.*, *ubi supra*. The common memorandum clause, by which certain enumerated and described goods are made free from average unless general, or the ship be stranded, has been in use for nearly one hundred and fifty years, and is intended to apply to goods of a perishable nature, and to meet the difficulty of proving whether a loss accrued from the inherent quality of the article, or from a peril insured against. It is printed into the policy in suit in these words: " Nor for any partial loss on salt, grain, peas, beans, fish, fruit, whether preserved or otherwise, hides, hops, vegetables, or other goods that are esteemed perishable in their own nature, or on the freight thereon, unless it amounts to seven per cent on the whole aggregate value of such articles, and happen by stranding." As *Kettell* v. *Alliance Ins. Co.* is directly in point, there is no occasion for considering whether a different rule will be applied to articles of a ·perishable nature included in the common memorandum clause, and whether such articles are liable to constructive total loss and abandonment. In England there seems to be no difference between memorandum articles and other goods in that respect. *Roux* v. *Salvador*, 3 Bing. N. C. 266. *Rosetto* v. *Gurney*, 11 C. B. 176. *Anderson* v. *Royal Exchange Assurance Co.* 7 East, 38. *Davy* v. *Milford*, 15 East, 559. *Adams* v. *Mackenzie*, 13 C. B. (N. S.) 442. *De Mattos* v. *Saunders*, L. R. 7 C. P. 570.

Whether in this Commonwealth there can be no total loss of a memorandum article, if any part of it arrives at the port of discharge *in specie*, or whether a special rule will apply to such articles, and there may be a constructive total loss and

abandonment of them, if, as may have been the fact in the case at bar, the damage is such that the expense of landing and restoring the goods will equal or exceed their actual value, or whether the general rule in regard to other cargo will apply, and damage to the amount of one half of the insured value with abandonment will constitute a total loss, we express no opinion. See *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39; *Morean* v. *United States Ins. Co.* 1 Wheat. 219; *Wallerstein* v. *Columbian Ins. Co.* 44 N. Y. 204; *Poole* v. *Protection Ins. Co.* 14 Conn. 47.                    *Judgment on the verdict.*