## FOUNTAIN & HERRINGTON, Inc., v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 3204.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

E. K. Bryan, of Wilmington, N. C. (John A. Stevens and Bryan & Campbell, all of Wilmington, N. C., on the brief), for appellant.

J. O. Carr, of Wilmington, N. C. (Carr, Poisson & James, of Wilmington, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WEBB, District Judge.

PARKER, Circuit Judge.

This is an appeal in an action instituted to recover on a policy of life insurance. The defendant admitted the execution of the policy, but alleged that same was avoided by reason of the falsity of certain representations contained in the application. Plaintiff, in reply, alleged that defendant's local agent had knowledge of the facts, and that the delivery of the policy under the circumstances was a waiver of the right to rely upon the falsity of the representations. Plaintiff also alleged that, after the delivery of the policy, the insured communicated the facts to an investigating agent of the company, with the request that the company elect at once what action it intended to pursue, and that its failure promptly to declare a forfeiture and return the premium was a waiver of the right to rely upon a forfeiture. At the conclusion of the evidence, the trial judge instructed the jury to answer the issues submitted in favor of the defendant, and from judgment thereon the plaintiff has appealed.

The insured was one Joseph W. Herrington. On November 5, 1929, he applied to defendant for a policy on his life in the sum of $10,000; and in his application, attached to and made a part of the policy, he stated in answer to questions expressly directed to these matters that he was in good health; that he had had no illness or disease since childhood, except one attack of malaria in 1923; that he had consulted no physician for any ailment within five years, except one physician in 1923; and that no other application for insurance on his life was then pending or contemplated. Preceding the

questions in the application the following statement was made: "All the following statements and answers and all those that the insured makes to the company's medical examiner, in continuation of this application, are true, and are offered to the company as an inducement to issue the proposed policy."

The uncontradicted testimony showed that all of the statements of the insured heretofore quoted were false. He was not in good health, but had been suffering with pains which he thought were being caused by appendicitis, for which he underwent an operation in the latter part of January, 1930, which resulted in his death on February 1st. He had consulted a physician with regard to his condition frequently during the year preceding his application, and at the time of the application he had pending with the Pilot Life Insurance Company an application for life insurance which he had filed on November 1st. In the application to the Pilot Life, in answer to the question, "Have you ever been advised to have, or do you contemplate a surgical operation," he answered, "Appendicitis advised four years chronic type."

There was testimony on behalf of the plaintiff that at the time of issuing the policy defendant's local agent who solicited same knew that insured had consulted a local physician with regard to his condition, and that the application with the Pilot Life was pending. The application to defendant, however, contained the following provision: "It is agreed that no agent or other person except the president, vice-president, a second vice-president, or a secretary of the company has power on behalf of the company to bind the company by making any promise respecting benefits under any policy issued hereunder or accepting any representations or information not contained in this application, or to make, modify or discharge any contract of insurance, or to extend the time for payment of a premium, or to waive any lapse or forfeiture or any of the company's rights or requirements." And a similar provision was contained in the face of the policy as issued.

The policy was issued on November 12th. On December 5th defendant received information that insured had had attacks of appendicitis, and sent its investigator to Wilmington to look into the matter. He made a report which was referred to the legal department of the company for an opinion. There is nothing in the record to show what this report contained or that the investigation was completed. One witness testified that the investigator stated that insured had said to him that, if the company wanted the policy back, it should say so and return his money, and that, if there was anything wrong with the policy, he did not want it. The local agent testified that insured told him that he wanted the company to make up its mind to do something, because he could get the insurance with another company. But neither the local agent nor the investigator had authority to cancel the policy or return the premium; and there is no evidence that insured ever called upon the company, or upon any of its agents having authority in the premises, to make any election with respect to canceling or continuing the insurance.

There is no evidence that defendant took any action recognizing the validity of the policy after acquiring notice of the falsity of the matters contained in the application; and, while no effort was made to effect a cancellation or return the premium prior to the death of insured, there is no such evidence of undue delay or of other circumstance as would warrant an inference that the company intended to waive the falsity of the statements contained in the application and continue the insurance.

■ As the policy, by its express provisions, was not to take effect until delivered to the insured and the premium thereon paid, and as it was delivered and the premium was paid in North Carolina, it was, without the aid of any statute, unquestionably a North Carolina contract governed by the laws of North Carolina. Equitable Life Society v. Clements, 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; Hogue-Kellogg Co. v. G. L. Webster Canning Co. (C. C. A. 4th) 22 F.(2d) 384. And, as the application was taken in North Carolina, this result follows by express provision of the North Carolina statute. Consol. St. N. C. § 6287; Williams v. Mutual Reserve Fund Life Ass'n, 145 N. C. 128, 58 S. E. 802, 13 Ann. Cas. 51.

■ Under the law of North Carolina, statements in the application are deemed representations and not warranties, and will not prevent a recovery on the policy, unless material or fraudulent. Consol. St. § 6289. But, if material, they render the policy voidable; and they are to be deemed material if they are of such a nature as would materially influence the judgment of the insurance company either in accepting the risk or fixing the premium rate. Bryant v. Metropolitan Life Ins. Co., 147 N. C. 181, 60 S. E. 983; Gardner v. North State Mut. Life Ins. Co., 163 N. C. 367, 79 S. E. 806, 48 L. R. A. (N.

S.) 714, Ann. Cas. 1915B, 652. Answers made in response to questions in the application as to prior illness, consultation with physicians and applications for other insurance, where the applicant, as here, declares that they are true and offers them as an inducement to the issuance of the policy, are deemed material as a matter of law. George Washington Life Ins. Co. v. American Collapsible Box Co., 185 N. C. 543, 117 S. E. 785; Mutual Life Ins. Co. v. Leaksville Woolen Mills, 172 N. C. 534, 90 S. E. 574, 576; Alexander v. Metropolitan Life Ins. Co., 150 N. C. 536, 64 S. E. 432. The rule is thus stated by Mr. Justice Brown, speaking for the Supreme Court of North Carolina in the Leaksville Woolen Mills Case, supra, as follows: "The materiality of the representations is not open to dispute. It does not depend upon inferences drawn from facts and circumstances to be proved, in which event the question is one for the jury. A different rule prevails where the representations are in the form of written answers made to written questions. In such case the questions and answers are deemed to be material by the acts of the parties to the contract."

And this is in accordance with the rule as laid down by the federal courts. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Jeffries v. Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833; Union Indemnity Co. v. Dodd (C. C. A. 4th) 21 F.(2d) 709, 55 A. L. R. 735; Keeton v. Jefferson Standard Life Ins. Co. (C. C. A. 4th) 5 F.(2d) 183. The rule is thus stated by the Supreme Court of the United States in the Jeffries Case, and the statement is quoted with approval by the Supreme Court of North Carolina in the Leaksville Woolen Mills Case: "The proposition at the foundation of this point is this, that the statements and declarations made in the policy shall be true. * * * There is no place for the argument either that the false statement was not material to the risk, or that it was a positive advantage to the company to be deceived by it. * * * The company deems it wise and prudent that the applicant should inform them truly whether he has made any other application to have his life insured. * * * The same is true of its inquiry whether the party is married or single. The company fixes this estimate of its importance. The applicant agrees that it is thus important by accepting this test. It would be a violation of the legal rights of the company to take from it its acknowledged power thus to make its opinion the standard of what is material, and to leave that point to the determination of a jury. The jury may say, as the counsel here argues, that it is immaterial whether the applicant answers truly if he answers one way, namely, that he is single, or that he has not made an application for insurance. Whether a question is material depends upon the question itself. The information received may be immaterial. But if under any circumstances it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial."

The plaintiff does not seriously controvert the position that the representations were material. Its position is that the knowledge of the local agent of the truth as to the matters inquired about was imputable to the company, and that the issuance of the policy in the face of his knowledge was a waiver of the right to avoid the policy on account of the falsity of the representations. The answer to this is that notice to an agent is notice to the principal only as to matters lying within the scope of the agent's authority; and the agent here had no authority to pass upon risks, accept any representations or information not contained in the application, or waive forfeitures. And not only was the authority of the local agent thus limited; but both in the application and in the policy as issued the insured agreed upon such limitation. It is well settled that the courts of the United States will recognize and enforce such limitations upon the power of the agent thus brought to the attention of the insured, and that knowledge on the part of the agent in such case will not be imputed to the company or result in a waiver of conditions contained in the policy. Lumber Underwriters v. Rife, 237 U. S. 605, 609, 35 S. Ct. 717, 59 L. Ed. 1140; Ætna Life Ins. Co. v. Moore, supra, 231 U. S. 543, 559, 34 S. Ct. 186, 58 L. Ed. 356; Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; New York Life Ins. Co. v. Fletcher, supra, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Globe Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Ins. Co. v. Norton, 96 U. S. 234, 240, 24 L. Ed. 689; Northern Assur. Co. Limited v. Case (C. C. A. 4th) 12 F.(2d) 551; Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co. (C. C. A. 4th) 3 F.(2d) 784.

Plaintiff contends, however, that the law applicable is the law as laid down by

the North Carolina courts, and that under the North Carolina decisions the knowledge of the local agent is imputed to the company, notwithstanding the provisions of the policy, and that delivery of the policy in the face of such knowledge is a waiver of conditions, the effect of which is to render the policy void or voidable. See Short v. LaFayette Life Ins. Co., 194 N. C. 649, 140 S. E. 302, and cases there cited. This, however, is a matter in which we follow the general law as declared by the courts of the United States and are not bound by state decisions. The fact that the contract was a North Carolina contract and governed by the laws of North Carolina does not mean that we follow the North Carolina decisions in interpreting it. If it did, the well-settled doctrine of Swift v. Tyson, 16 Pet. 1, 18, 10 L. Ed. 865, would mean nothing as applied to contracts; for all contracts are governed either by the laws of the state where they are made or by the laws of the state where they are to be performed.

The rule as to following the laws of the states is that we are bound by state statutes and by state decisions interpreting state statutes or relating to rights of property within the state; but we are not bound by state decisions in the interpretation to be placed upon contracts or as to other matters arising under the common law or the general principles of jurisprudence. The leading case on the subject is Swift v. Tyson, supra, where Mr. Justice Story thus states the law applicable here: "In the ordinary use of language, it will hardly be contended, that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not, of themselves, laws. They are often re-examined, reversed and qualified by the courts themselves, whenever they are found to be either defective, or ill-founded, or otherwise incorrect. The laws of a state are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long-established local customs having the force of laws. In all the various cases, which have hitherto come before us for decision, this court have uniformly supposed, that the true interpretation of the 34th section [of the Judiciary Act of 1789] limited its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intra-territorial in their na-

ture and character. It never has been supposed by us, that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves, that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. And we have not now the slightest difficulty in holding, that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence."

In Washburn & Moen Mfg. Co. v. Reliance Ins. Co., 179 U. S. 1, 21 S. Ct. 1, 5, 45 L. Ed. 49, the Supreme Court had under consideration a policy of marine insurance taken out in Massachusetts, and governed, of course, by the laws of that state. In answering a contention that the court should follow the rule as laid down by the Supreme Judicial Court of Massachusetts in construing the policy, the court, speaking through Chief Justice Fuller, said: "It is said that a different rule has been laid down in Massachusetts by the supreme judicial court of that commonwealth. Kettell v. Alliance Ins. Co., 10 Gray, 144; Mayo v. India Mut. Ins. Co., 152 Mass. 172, 25 N. E. 80, 9 L. R. A. 831 [23 Am. St. Rep. 814]. Even if this were absolutely so we should not feel constrained, though regretting the difference of opinion, to depart from our own rule. The policy was a Massachusetts contract, it is true, but its construction depended on questions of general commercial law, in respect of which the courts of the United States are at liberty to exercise their own judgment, and are not bound to accept the state decisions as in matters of purely local law."

In Independent School District v. Rew (C. C. A. 8th) 111 F. 1, 11, 55 L. R. A. 364, where the court had under consideration the effect of recitals in municipal bonds, the late Judge Sanborn, answering a con-

tention that the court should follow the local decisions, said: "But the question that has been under consideration here is not one of the construction of the constitution or of the statutes of the state of Iowa. It simply involves the construction and effect of recitals in negotiable instruments. It is a question of commercial, and not of constitutional, law, upon which the decisions of the state courts are not controlling in the federal tribunals. It is not only the privilege, but the duty, of the federal courts, imposed upon them by the constitution and statutes of the United States, to consider for themselves, and to form their independent opinions and decisions upon, questions of commercial or general law presented in cases in which they have jurisdiction, and it is a duty which they cannot justly renounce or disregard. Jurisdiction of such cases was conferred upon them for the express purpose of securing their independent opinions upon the questions arising in the litigation remitted to them. And a citizen of the United States who has the right to prosecute his suit in the national courts has also the right to the opinions and decisions of those courts upon every crucial question of general or commercial law or of right under the constitution or statutes of the nation which he presents." See, also, 27 R. C. L. 52; Hawkeye Com. Men's Ass'n v. Christy (C. C. A. 8th) 294 F. 208, 211, 40 A. L. R. 46; Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772; Salem Trust Co. v. Manufacturers' Finance Co., 264 U. S. 182, 191, 44 S. Ct. 266, 68 L. Ed. 628, 31 A. L. R. 867; Colorado Yule Marble Co. v. Collins (C. C. A. 8th) 230 F. 78, 80.

█ It is said, however, that the question is one of applying the statutes of the state, because section 6457 of the Consolidated Statutes provides: "A person who solicits an application for insurance upon the life of another, in any controversy relating thereto between the insured or his beneficiary and the company issuing a policy upon such application, is the agent of the company and not of the insured."

We do not see that this statute has any relation to the question involved. It provides merely that a soliciting agent shall be deemed the agent of the company and not of the insured. It does not attempt to prescribe the extent of the agent's authority or to convert a special or limited agency into one with general powers. Such a statute was before the Supreme Court in Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 621–623, 36 S. Ct. 676, 680, 60 L. Ed. 1202, where a statute of Florida provided that any person who received money for an insurance company in payment of a contract of insurance, or who directly or indirectly caused to be made any contract of insurance, should be deemed to all intents and purposes an agent or representative of the company. In answering a contention that this statute so enlarged the authority of the local agents that their knowledge was to be imputed to the company irrespective of provisions contained in the policy, the court said: "Section 2765 of the Florida Statutes [Gen. St. 1906], supra, undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons and certainly does not raise special agents with limited authority into general ones possessing unlimited power." See, also, so, the recent decision of the Supreme Court in Sun Insurance Office v. Scott, 52 S. Ct. 72, 76 L. Ed. ——.

█ The only remaining question relates to the statements made to the investigator after the delivery of the policy. As the investigator had no authority to cancel the policy or waive forfeitures, it is clear that the statement made to him by the insured, to the effect that, if the company wanted the policy back, it should say so, was not a demand upon a proper officer of the company, and did not impose upon it the duty of electing whether to cancel the policy or not, so as to create an estoppel by reason of its failure to cancel promptly. Furthermore, as there is no substantial evidence that insured changed his position, failed to obtain other insurance, or was otherwise prejudiced by reason of the failure of the company to cancel promptly, there is no basis for an estoppel.

█ Nor do we think there is evidence upon which the company can be held to have waived its right to avoid the policy. It took no affirmative action of any sort recognizing the policy as valid; and, while the law is that a company, upon discovering the falsity of a representation in an application, must take action to avoid the policy within a reasonable time or it will be deemed to have waived the right to do so (see Cooley's Briefs on Insurance [2d Ed.] vol. 5, p. 4290 and cases cited at p. 4293), we do not think the evidence of delay here is sufficient to justify an inference of waiver under this rule. The cancellation of a policy for misrepresenta-

126

tion is a serious matter, both to the company and to the insured; and, although good faith requires that the company act promptly upon discovering the falsity of a representation, it is entitled to a reasonable time within which to investigate the matter and to determine what course to pursue. If insured had not died and this were a suit to cancel the policy on the ground of misrepresentation, no one would contend that, by reason of the delay here relied upon, the company had waived its right; and the fact that the insured has died in the meantime does not, of course, affect the matter.

There was no error, and the judgment below will be affirmed.

Affirmed.