## FIDELITY & CASUALTY CO. OF NEW YORK v. PHELPS et ux.

### No. 3429.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

Harriet L. French and D. E. French, both of Bluefield, W. Va. (French, Easley, Easley & French, of Bluefield, W. Va., on the brief), for appellant.

George Richardson, Jr., of Bluefield, W. Va. (Albert S. Kemper, Jr., of Bluefield, W. Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

234

NORTHCOTT, Circuit Judge.

This suit in equity was brought in the District Court of the United States for the Southern District of West Virginia to cancel a life and accident insurance policy issued on December 3, 1923, to one J. Frank Phelps, in which policy his wife, Hettie G. Phelps, was named as beneficiary.

The bill was filed in October, 1931, by appellant (who will be here referred to as plaintiff), and a motion was made to dismiss the bill as being insufficient. Answer of appellees (who will here be referred to as defendants), was filed, and, after the court below overruled the motion to dismiss, a hearing was had in February, 1932. A number of witnesses were examined in person. Depositions of two witnesses were read. In September, 1932, the trial judge filed an opinion finding for the defendants, and entered a decree dismissing the bill, from which action this appeal was brought.

The bill alleged that, in order to secure the policy in question, the defendant, J. Frank Phelps, made a statement in the application for said policy, signed by him in December, 1923, that he was in sound condition mentally and physically, and that said statement that said defendant was "in sound condition mentally and physically" was untrue at the time that it was made. The bill further alleged that the said defendant was not in a sound condition physically at the time he made the statement, because at that time "he was then and had been blind, or practically blind, in his left eye since his youth, which he well knew at the time of making said application."

The policy as originally issued was for the period of one year, and was extended each year by a certificate issued by the plaintiff company which provided as follows: "Provided that the assured, upon the date first above mentioned (and which is the renewal date) is in sound condition mentally and physically, except as stated in the policy."

The premiums were paid each year, and the last renewal of the policy was December 3, 1928.

The terms of the policy included payment of weekly indemnity of $50 a week and $15,000 in the event of death resulting directly and exclusively from accident, with a further proviso that, in the event of an accident while in a private conveyance, the indemnity and life insurance should be doubled.

In June, 1929, the said J. Frank Phelps was injured in an automobile accident while he was driving alone in his automobile engaged in his occupation as salesman. The car left the road running over a bank, and the said defendant, the only witness to the accident, testified that the accident happened because of a defect in the mechanism of the car. The injuries resulted in the alleged total disability of insured.

Phelps filed claims for double indemnity and the plaintiff paid him in all $10,871.20 prior to the institution of this suit. Plaintiff's bill, in addition to praying for the cancellation of the policy, prayed for judgment for the amount paid under the policy, less premiums. The policy provided that the insured should submit to an examination by any medical adviser of the company, and during an examination it developed that defendant J. Frank Phelps had defective vision in his left eye from early childhood, and that defendant, accompanied by his wife, went to Richmond, Va., where he was examined by eye specialists who found the vision of the left eye to be bad and, expressed by them in technical terms, to be twenty-two hundred (20/200). The two eye specialists who examined the defendant claimed that he told them that he had had this defect of vision in his left eye, and at the plaintiff's request said it was caused, so his mother had told him, by a "rising." It is also admitted that said defendant was cross-eyed from infancy, but he testified that this defect had been largely remedied by a pair of glasses fitted for him by an eye specialist when he (the defendant) was twenty or twenty-one years old. Defendant denied the statement attributed to him by the doctors.

Expert witnesses, who were eye specialists, testified that defendant J. Frank Phelps had, when they examined him, what they termed "absence of binocular single vision," and that from that fact they concluded his trouble existed from early childhood, because, as one of them said, it was from that time (two to three years of age) that single vision with the two eyes is established. One witness further testified that it was "not likely" that, if defendant had fairly normal eyesight and used his eyes until he was fifty years of age, he would after that acquire the double vision found existing. It is a significant fact that none of the experts testified that the condition of Phelps' left eye could not have been caused by the injuries resulting from the accident.

The defendant J. Frank Phelps testified that he was fifty-eight years old, and that he had been engaged in various activities all his life, doing many things that demanded good eyesight; that, other than being somewhat

cross-eyed, he had never been conscious of any defect in his sight in either eye until after the accident; that the last time he had had glasses fitted was in the year 1920 or 1921; and that he was wearing the same glasses at the time of the accident and also had them on at the trial. It was proven that the lenses of these glasses were practically the same for both eyes, and the optometrist who fitted the glasses testified that he remembered the occasion, and was satisfied that, if there had been any marked difference in the vision of defendant's two eyes, he would have noticed it and remembered it, and that he always tested each eye of a patient separately.

The insured further testified that he had never had any trouble driving his automobile, and had never had an accident driving before the time he was injured, and that at the time he stated that he was in a sound condition mentally and physically he thought he was in such sound condition and knew nothing to the contrary.

A number of witnesses testified as to working with the defendant and not being aware of any defect in his vision.

Both of the defendants testified that the vision of the left eye of the insured had only become bad after the accident.

The following excerpt from the evidence of one of the doctors who was a witness for the plaintiff is illuminating:

"Question, 'You can state, though, Doctor, just what conclusions you and Dr. Hill reached in regard to his left eye?' Answer, 'I concluded, taking in various factors in the history of the case, the presence of central scotoma, the absence of any objective findings, that the man had always had poor vision in the left eye.' "

"Q. 23. 'What do you mean by "poor vision" '? A. 'Slightly sub-normal vision.'

"Q. 24. 'Do you mean defective vision?' A. 'Defective vision.'

"Q. 25. 'What conclusion did you reach as to the cause of this?' A. 'I concluded that this was either a congenital defect, that is, existing prior to birth or shortly subsequent to that, or some infection in the early years of the patient's life.'

"Q. 26. 'I will ask you upon what you based that conclusion?' A. 'The patient's history that his vision had always been poor, his statement that he had been cross-eyed in childhood, the absence of what we call binocular single vision, that is using the two eyes together, he works his eyes independently, and the absence of any objective findings to account for his poor vision.' "

■ Surely "slightly sub-normal vision" in one eye could not be considered as constituting an unsound condition physically.

■ In order to justify the cancellation of the policy here in question, the plaintiff must prove the falsity of the statement that constituted the warranty by clear and convincing proof. As was said by Mr. Justice Swayne, in Farmers' & Merchants' Nat. Bank v. Dearing, 91 U. S. 29, 35, 23 L. Ed. 196: "Forfeitures are not favored in the law. Courts always incline against them. Marshall v. Vicksburg, 15 Wall. 146 [21 L. Ed. 121]."

"The law abhors a forfeiture." Mutual Life Ins. Co. v. Breland, 117 Miss. 479, 78 So. 362, 364, L. R. A. 1918D, 1009.

■ We are of the opinion that the plaintiff has not proven the falsity of the statement made by the insured. All the direct evidence offered as to the condition of Phelps' left eye pertained to a condition that existed after the accident, and there was no direct testimony that there was defective vision in Phelps' left eye in the year 1923 when the statement was made. It is undoubtedly true that he was at that time somewhat cross-eyed, but Phelps himself testified, and it is not denied, that even that defect had been largely cured by the fitting of glasses. The evidence of those who worked with him, of his wife and of the witness who fitted the glasses for him in the year 1920 or 1921, all go to corroborate Phelps' own statement to the effect that in the year 1923 he was conscious of no appreciable difference in the vision of his two eyes and that the vision in both was good. The evidence falls far short of sustaining the allegation in the bill that at the time of the making of the statement alleged to be false Phelps was practically blind in his left eye, and had been in that condition since his youth. As we have already pointed out, no witness testified that the condition of Phelps' left eye, as found when he was examined by the specialists, could not have resulted from the injuries sustained in the accident. There is no evidence that any defect in insured's eyesight contributed to cause the accident in which he was injured.

■ The trial judge found as a fact that the assured made the warranty in perfect good faith believing that the vision of his left eye was good. The judge further states, in his finding of fact, that, if it were necessary to decide it, he was of the opinion that Phelps' statements, as testified to by the spe-

236

cialists, did not go as far as the specialists claimed. This court has repeatedly held, and we know of no authority to the contrary, that the finding of the trial judge who has heard the witnesses is entitled to great weight. The Corapeake (C. C. A.) 55 F.(2d) 228, and authorities there cited. A careful study of the record in this case leads us to the same conclusion reached by the judge below. The plaintiff has failed to carry the burden of proof as to the falsity of the statement complained of, and, while it is unquestionably the law that a false warranty will invalidate a contract of this character, even if made in good faith [Jeffries v. Economical Mut. Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833; Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Standard Life & Accident Ins. Co. v. Sale (C. C. A.) 121 F. 664, 61 L. R. A. 337; Bankers' Reserve Life Co. v. Matthews (C. C. A.) 39 F.(2d) 528; Schwarzbach v. Ohio Valley Protective Union, 25 W. Va. 622, 52 Am. Rep. 227], and that insurance companies have a right to rely upon statements made by applicant for insurance, yet, in order to invalidate a policy once issued, proof of such falsity must be such as to entirely satisfy the conscience of the chancellor. Here there is no convincing proof that the statement of the insured was not absolutely and literally true at the time it was made and at the time of the last reissuance of the policy. Inference, speculation, and surmise are not sufficient to deprive an insured of the benefits of a policy issued to him and upon which he has paid premiums for a number of years. An able discussion of the principles involving the character of proof necessary to warrant the cancellation of an insurance policy, by Judge Parker of this court, will be found in Missouri State Life Insurance Co. v. Guess, 17 F.(2d) 450.

The right of an insurance company to contract and to have the contract, once made, enforced, is unquestioned.

"It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. v. Hurni [Packing] Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. [Met. Life] Insurance Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. This canon

of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense." Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416.

■ On the other hand, to avoid the obligation resting upon the company, once the policy is issued, the proof must be certain. It is not certain here.

"If policies of insurance * * * are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract." McMaster v. N. Y. Life Insurance Co., 183 U. S. 25, 22 S. Ct. 10, 16, 46 L. Ed. 64. See, also, Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895.

■ It was strongly urged on behalf of the appellant that the judge below erred in not granting plaintiff's motion, made at the conclusion of the taking of evidence, to have the insured examined by doctors appointed by the court, and it was further urged that the case should be referred back for additional evidence. This motion the trial judge denied on the ground that the insured had been examined several times, and that in his opinion a further examination as to insured's then condition would be of no value as bearing on the truth or falsity of the statement made in 1923. We are, of the opinion that the motion for further examination was properly denied.

The plaintiff has not made such a case as would entitle it in justice and equity to the relief prayed for, and the decree of the court below is accordingly affirmed.