ATLANTIC LIFE INS. CO. v. HOEFER.*

No. 3452.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

*Rehearing denied October 3, 1933.

NORTHCOTT, Circuit Judge, dissenting.

Alex. W. Parker, of Richmond, Va., and Alva M. Lumpkin, of Columbia, S. C. (Thomas, Lumpkin & Cain, of Columbia, S. C., on the brief), for appellant.

C. T. Graydon, of Columbia, S. C. (T. H. Moffatt and W. M. Easterling, both of Columbia, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Atlantic Life Insurance Company, a Virginia corporation, brought a suit in equity in the District Court to rescind and cancel a life insurance policy in the sum of $5,000 on the life of Frank C. Hoefer, in which Ida K. Hoefer, the defendant in the District Court, a citizen of South Carolina, was named as beneficiary. It was charged in the bill that the insured in his application for the policy had made certain material misrepresentations which entitled the insurance company to cancellation, and so it brought into the registry of the court the amount of the premiums paid by the insured, with interest at 7 per cent. per annum, which had been previously tendered to the beneficiary and had been refused. The charge of misrepresentation was denied, and, evidence having been taken, the bill was dismissed by the District Judge on the ground that the statements made by the insured in the application were materially correct, and that he had acted in good faith toward the company, since he believed his statements to be true.

The controlling facts are not in dispute. The application for the policy was made on March 7 and 8, 1930. The executed policy was delivered to the insured on or about March 27, 1930. It provided that the entire contract between the parties consisted of the policy and the application; that all statements of the insured should, in the absence of fraud, be deemed representations and not warranties; that no statement should avoid the contract unless it was false and contained in the application; that the contract should not be modified except by indorsement thereon, signed by the president or a vice president or by the secretary or the assistant secretary of the company, and that no officer or agent of the company, except those mentioned, was authorized to modify or waive the provisions of the contract. The first premium was paid when the policy was delivered, and the insured died on October 23, 1930. The immediate cause of death was cerebral hemorrhage, and the second or contributing cause was hypertension or high blood pressure.

The insured stated in his application that he was in good health so far as he knew and believed; that he had had his tonsils removed by a surgical operation in 1927; that he had not consulted or been treated by a physician during the preceding ten years; and that he had not had any other ailment, illness, or condition not stated above. The last-mentioned statements were not correct, for the insured suffered from daily headaches for a year prior to June, 1927, and on numerous occasions in 1927 and subsequent years, prior to the application, had caused his blood pressure to be taken by physicians, and it had been found at times to be abnormally high. In fact, he informed the soliciting agent of the company at the time of the delivery of the application that his systolic blood pressure had gotten up to about 160 several years before. But this information was withheld from the company, and consequently, the making of the statement to the agent, while evidence of good faith on the part of the insured, can have no bearing upon the decision of this case. He declared in his application that his answers were complete and true, and that they were the only statements to be considered as the basis of the contract, and that he understood that the agent had no authority to alter the contract; and so the situation requires the application of the rule long recognized in the federal courts that limitations on the authority of an agent brought to the attention of the insured will be upheld, and the reservation by the company of the right to pass upon the risks involved as they appear in the written application for insurance will be respected. See Fountain & Herrington v. Mutual Life Ins. Co. (C. C. A.) 55 F. (2d) 120, 123, and cases cited.

Hoefer was born October 12, 1883, and was therefore forty-seven years of age at the time of his death. He operated several drug stores in Columbia, S. C., and was well acquainted with physicians who frequented his stores and practiced medicine in that city. He was a tall, heavy man, and, except for an attack of malaria in 1920, he had never been sick prior to 1926. From June, 1926, to June, 1927, he suffered practically every day from headache and neuralgia. A physician examined his blood pressure four or five times during the early part of 1927, and found that it fluctuated between 160 and 180. Later in the first six months of this year, his blood pressure was taken as many as twelve times by another physician. The first time it was found to be 140, at a later time 190, and at other times about 160. During this period the insured knew that his blood pressure was too high and was worried about his condition. Because of the high blood pressure, the headaches, and neuralgia, he was given medical advice as to his diet, and was told to have several infected teeth and his tonsils removed. These operations were performed in June, 1927, and, after they had been performed, the blood pressure came down. One physician examined him three times after the tonsilectomy, and found his blood pressure on one occasion to be between 150 and 160, and at other times 140. Subsequently, between the fall of 1927 and the fall of 1930, the blood pressure was taken periodically once a month by a doctor, and was found to range between 135 and 160. This indicated to the doctors and to the insured an improved condition, and, when the tests showed a reduction to 140 or 142, the examinations ceased. Two weeks later, the death of the insured occurred. On the day of the death the blood pressure was 160.

If this medical history of the insured had a material bearing upon the risk involved, the failure to communicate it to the insurance company prevented recovery in this case; for it is not a sufficient excuse that the insured believed that he had been cured when his blood pressure came down after the removal of his tonsils and some of his teeth. It was for the company and not for him to decide upon what terms, if at all, it was willing to insure his life. The medical testimony in the case shows quite conclusively that a blood pressure of 160 is abnormally high for a person of the age of the insured, and the maintenance of such a pressure for a substantial period of time is likely to be followed by a permanent hardening of the blood vessels, a condition of much significance in estimating the chances of longevity. Medical directors of several life insurance companies testified without contradiction that a well-regulated insurance company would have either refused the risk involved or have demanded further tests, or have required a higher premium, if the true facts had been communicated to it, and that this action would have been in accordance with underwriting rules and practices commonly employed by life insurance companies.

It follows that the facts omitted by the insured from his answers to questions propounded to him in the application had a material bearing upon his general health, and upon the risk which the company was requested to undertake; and the great importance of these inquiries is all the more clearly seen from the death of the insured from cerebral hemorrhage shortly after the policy was issued. The pending case in principle is not unlike the cases of Fountain & Herrington v. Mutual Life Ins. Co., 55 F.(2d) 120, and Union Indemnity Co. v. Dodd, 21 F.(2d) 709, 55 A. L. R. 735, decided by this court, in both of which representations made by the insured in his application, and known to him to be false, were held to invalidate the insurance. The quotations in the latter decision from Penn Mutual Life Ins. Co. v. Savings Bank (C. C. A.) 72 F. 413, 38 L. R. A. 33, and Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, show that a representation is material when reasonably careful and intelligent men would regard the fact involved as substantially increasing the chances of the loss insured against; and that this is especially true when the insurer, on becoming aware of the fact, would raise the rates or reject the risk altogether. Furthermore, these cases show that the claim of good faith upon which the beneficiary chiefly relies in the case at bar is not a valid defense, for they establish the rule that a material representation, known by the insured to be untrue, invalidates a life insurance policy without further proof of actual conscious design to defraud. The insurance company in the pending case was therefore entitled to the relief which it prayed in its bill of complaint; and the decree of the District Court is therefore reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that the decree of the court below should be affirmed. The state-

ments made by the insured in his application for the policy sought to be canceled were, by the provisions of the policy itself, representations and not warranties. The blood pressure of the insured was not shown by the evidence to have been abnormally high at any time, and at the time of the application for the policy the blood pressure was proven to be normal. The testimony of the medical experts is to the effect that high blood pressure is a symptom and not a disease, and that it, unless continued for a long time, does not necessarily result in a diseased condition of the arteries. The insured had had headaches, which his physician advised him came from high blood pressure. He was advised to have his tonsils removed, and did so, and his blood pressure became normal. He stated these facts to the agent of the company, but the agent did not incorporate them in the application. While under the decision of this court (Fountain & Herrington, Inc., v. Mutual Life Ins. Co., 55 F.(2d) 120) the knowledge of the agent in this respect may not be imputed to the insurance company, the fact that the insured informed the agent of these conditions shows his good faith. That insured refused to take the additional insurance offered him also shows that he was acting in good faith.

There is no evidence that he did not believe himself to be in good condition physically at the time of the application. The company physician examined him physically and passed him as a good risk. The court below who heard the witnesses found as a fact that the testimony would not warrant a finding that the insured misrepresented the facts or fraudulently concealed them, and further found as a fact that the insured acted "in utmost good faith toward the plaintiff insurance company and disclosed to it all of the material facts with which he was acquainted that were essential to the risk."

Giving to the findings of the trial judge that weight to which they are entitled (The Corapeake (C. C. A.) 55 F.(2d) 228), and being of the opinion that there was substantial evidence to support those findings, there is no doubt in my mind that the decree of the court below should be affirmed.

To warrant the cancellation, especially after the death of the insured, and to avoid the obligation resting upon an insurance company, the evidence must be "clear, unequivocal, and convincing." Missouri State Life Ins. Co. v. Guess (C. C. A.) 17 F.(2d) 450, 451; Fidelity & Casualty Company v. Phelps, 64 F.(2d) 233, decided by this court April 4, 1933. The evidence here does not, in my opinion, measure up to the required standard. There are no such circumstances present in this case as were proven in the case of Union Indemnity Co. v. Dodd et al. (C. C. A.) 21 F.(2d) 709, 55 A. L. R. 735, where the insured, himself an agent of the company, clearly made false and fraudulent representations as to material facts.

As was said by the judge below in this case: "The rule which governs us in a case of this character is: Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them. (Atlantic De Laine Co. v. James, 94 U. S. 207, 24 L. Ed. 112.)"

I am therefore of the opinion that the decree of the court below should be affirmed.