**HESSELBERG et al. v. ÆTNA LIFE INS. CO.**

No. 9997.

Circuit Court of Appeals, Eighth Circuit.
Feb. 1, 1935.

Clem F. Storckman and P. H. Cullen, both of St. Louis, Mo. (Joseph N. Hassett and Ernest E. Baker, both of St. Louis, Mo., on the brief), for appellants.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones, Frank Y. Gladney, Sullivan, Reeder & Finley, and Jones, Hocker, Gladney & Jones, all of St. Louis, Mo., on the brief), for appellee.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

On or about March 4, 1931, appellee issued its policy No. 892,228, dated January 6, 1931, upon the life of appellant Dan C. Hesselberg, in which it agreed to pay to appellant Jennie Hesselberg, beneficiary, the sum of $10,000 upon the death of the insured. This policy agreement was subject to the terms and conditions therein contained, and was issued in consideration of the statements and representations con-

tained in the written application of the insured for said policy, which application was attached to and made a part of the policy. The policy by its terms was incontestable after being in force for two years from its date of issue during the life of the insured, except for nonpayment of premiums. The medical part of said application was signed and executed by the insured on February 24, 1931. In that application appellant Dan C. Hesselberg stated in answer to the questions propounded therein that he had not consulted a physician, specialist, or other practitioner for, or suffered from, any injury. The insured had sustained an injury in an automobile accident on the 16th day of February, 1931, and had, on two occasions prior to his application for this policy, to wit, on February 18, 1931, and on February 22, 1931, consulted and been treated by a physician for the injuries sustained by him in said accident; February 18, 1931, he had employed counsel to institute a suit to recover damages for such injuries. Appellee, after being advised of the facts and of the falsity of the representations made, on November 23, 1932, tendered and paid into court the amount of the premiums, with interest, paid on said policy, and brought suit for cancellation, joining the insured and beneficiary as defendants. The trial court, finding the facts substantially as above stated, found further that the aforesaid statements and representations made by the insured in his application were false and knowingly untrue, and that knowledge thereof had not been brought home to appellee nor its authorized agents until long after the issuance of the policy. It concluded, as a matter of law, under the facts found by it, that appellee was entitled to a rescission and cancellation of the policy, and so decreed. This appeal followed.

February 16, 1931, appellant Dan C. Hesselberg, while traveling in his automobile, was struck from behind by a truck driven by an employee of the Beatrice Creamery Company. He suffered an injury to his right hand, and testifies that he also "received a sprain to his right side and neck right behind his right ear." Two days later he consulted his physician, who told him after examination that his injuries were of a light nature and would probably wear off after a few days. He had three accident policies then in force, but was advised by his physician to make no claim at that time. The physician saw him again professionally on February 22d and 27th and on March 2d and 6th, all in 1931. These visits were occasioned by the fact that he continued to have pain in his back, right arm, and neck. After his first visit to his physician, he saw the manager of the Beatrice Creamery Company, and demanded settlement for the damage to his car and for his doctor's bill. He was told to get a lawyer if he wanted to recover for his damage. February 18th he authorized his attorney to bring suit against the Creamery Company for damages to his automobile and for his injuries. The suit was filed March 18, 1931, for damages laid at $7,500. The damage to the automobile was comparatively slight.

February 24, 1931, he went to the offices of the Crane Insurance Agency in connection with certain bills for repairs upon his automobile. He carried collision insurance through that agency. While there one Peter Hughes, an insurance broker with an office in the Crane Agency, came in. It appears that Hughes had theretofore been urging Hesselberg to take out a $5,000 policy, and had ascertained that such a policy could be issued by appellee herein. He persuaded Hesselberg to accompany him to the Ætna office, where the application was made. The policy was dated back to January 6, 1931, to give Hesselberg the benefit of the lesser premium due to his lower age at that date. It was written for $10,000 instead of $5,000, because the insured wished to make monthly premium payments, and this privilege required a policy for the larger amount. The policy, when issued, was delivered to Dan Hesselberg's brother, and, when the insured learned of the change in amount, together with some incidental increase in premium, he objected and took steps toward cancellation. The matter was, however, adjusted, and the policy was continued in force. This incident was stressed in brief and argument as bearing upon the good faith and "clean hands" of appellee, but we do not perceive that it has any substantial bearing upon the merits of this controversy.

Hesselberg continued his work, which appears to have been that of a traveling salesman. He had pains in his head and saw a doctor in June or July, 1931, and again in January, 1932. In March, 1932, an examination at Barnes Hospital in St. Louis disclosed a dislocation of the first cervical vertebra and a compression fracture of the body of the fifth vertebra of the neck. Upon discovery of the seriousness of the injuries, Hesselberg's petition against the

Creamery Company was amended and the prayer for damages was increased. He subsequently recovered judgment in the sum of $25,000.

The policy of insurance in controversy contained a clause which insured against permanent total disability; the insurer in such event agreeing to pay $100 per month and to waive premiums during the continuance of such disability. Claim was first made by Hesselberg against appellee under this clause June 20, 1932. It is conceded that appellee learned of the fact upon which it seeks cancellation on June 23, 1932. Its investigation was completed in August, the premiums were tendered back in September, and this suit was filed in November.

On this appeal the points specified to be argued reduce themselves substantially to the following:

(1) Where the insurer or its agent knew that the applicant had visited a doctor, and knew about the state of his health when the application was taken and the contract was made, the policy cannot be canceled on the ground that the application contains misstatements with respect to such matters.

(2) The policy cannot be canceled unless it is proved that the matter misrepresented was material to the risk.

(3) Mere falsity of statements is not sufficient. The applicant must have had knowledge of their falsity and have acted in bad faith.

(4) Appellee does not come into equity with clean hands and should be denied relief.

These contentions of appellants as applied to the facts in the case will be considered in that order.

1. Dan Hesselberg testified that he acquainted the agents of appellee with the circumstances of his accident and the nature of his injuries. The testimony of the broker Hughes tends to support appellant to the extent that an accident of some sort was mentioned. Both Paradise, agency supervisor of appellee, and Dr. Claridge, the medical examiner, testified that they were not so advised nor informed. The court found this issue of fact in favor of appellee, and in the record no reason is shown why this finding should be disturbed. Appellants, however, contend that the knowledge of the broker Hughes should be imputed to appellee, citing the following language from section 5733, R. S. Mo. 1929 (Mo. St. Ann. § 5733, p. 4380): "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

This section clearly has no application to Hughes, who was confessedly a broker and not the agent of appellee. His status is defined by section 5904, R. S. Mo. 1929 (Mo. St. Ann. § 5904, p. 4503), which provides that: "Whoever, for compensation, acts or aids in any manner in negotiating contracts of insurance * * * for any person other than himself, and not being the appointed agent or officer of the company in which such insurance or reinsurance is effected, shall be deemed an insurance broker."

Such person is forbidden to act without first having obtained a certificate of authority or broker's license. Generally speaking, an insurance broker is the agent of the assured, and not the agent of the insurer. Pringle v. Ætna Life Ins. Co., 123 Mo. App. 710, 101 S. W. 130, 131; Edwards v. Home Insurance Co., 100 Mo. App. 695, 73 S. W. 881; United Firemen's Insurance Co. v. Thomas (C. C. A. 7) 92 F. 127, 47 L. R. A. 450; International Paper Co. v. General Fire Assur. Co. (C. C. A. 2) 263 F. 363.

If a broker is ever the agent of the insurer, it is because of some special condition or circumstance in the particular case. Pringle v. Life Insurance Co., supra, quoting from a New York case [Allen v. German-American Ins. Co., 123 N. Y. 6, 25 N. E. 309] as follows: "A mere insurance broker cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts, from which a general authority to represent it might be fairly inferred."

No such evidence, facts, special condition, or circumstances are here present, and whatever knowledge Hughes may have had cannot be imputed to appellee. Hesselberg testifies that he did not read the application and did not know that it contained the questions and answers complained of. He signed it, however, and cannot be heard to disclaim its contents. This point must be ruled against appellants. Perkins v. Prudential Insurance Co. (C. C. A. 7) 69 F.(2d) 218.

2. In support of their contention under this heading, counsel cite section 5732, R.

S. Mo. 1929 (Mo. St. Ann. § 5732, p. 4373), which reads thus: *"Misrepresentation.—* No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

This section of the Missouri Statutes does not condition an action in equity brought during the life of the insured to annul a contract of insurance obtained by false representations made by the insured which would tend to make the risk assumed by the company less hazardous than the true facts would indicate. Schuermann v. Union Central Life Insurance Co., 165 Mo. 641, 65 S. W. 723; nor do state laws "ordinarily constitute a rule of decision binding on federal courts of equity," Brill v. W. B. Foshay Co. (C. C. A. 8) 65 F.(2d) 420, 424. The representations, however, were clearly material to the risk. The general rule in this and other federal jurisdictions is that statements in applications for life insurance policies as to prior illness, and consultations with physicians are deemed material as matter of law. They are recognized as materially influencing the insurer's judgment in accepting the risk or fixing the premium. Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A. 8) 260 F. 641; Fountain & Herrington v. Mutual Life Ins. Co. (C. C. A. 4) 55 F.(2d) 120; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co. (C. C. A. 6) 72 F. 413, 38 L. R. A. 33; Raives v. Raives (C. C. A. 2) 54 F.(2d) 267; New York Life Ins. Co. v. McCarthy (C. C. A. 5) 22 F.(2d) 241, 244; Atlantic Life Ins. Co. v. Hoefer (C. C. A. 4) 66 F.(2d) 464; Aetna Life Ins. Co. v. Perron (C. C. A. 7) 69 F.(2d) 401; Jefferson Standard Life Ins. Co. v. Stevenson (C. C. A. 5) 70 F.(2d) 72.

■ 3. If the representation is found to be material, the policy will be avoided whether the untrue answer was made in good faith or not. Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., supra; Atlantic Life Ins. Co. v. Hoefer, supra; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Jefferson Standard Life Ins. Co. v. Stevenson, supra. And this is true even though the insured may not have known of the seriousness of his condition. Perkins v. Prudential Ins. Co. (C. C. A. 7) 69 F.(2d) 218; Manley v. Pacific Mutual Life Ins. Co. (C. C. A. 5) 35 F.(2d) 337.

■ 4. Under this point, counsel for appellants urge the issue to Hesselberg of a $10,000 policy, when his application was for $5,000 only; the increase of premium from $12.20 to $15.90 per month; and the refusal to cancel on that ground. As heretofore stated, subsequent negotiations resulted in his final acceptance of the policy as issued and payment of the premiums for a considerable period thereafter. If this transaction, under the circumstances detailed in the record, can be conceived to import inequitable conduct on the part of appellee, which is not conceded, it cannot now, long after adjustment and acceptance, be urged as a defense to this action.

Appellants also claim unreasonable delay in the return of premiums and the bringing of this action. Upon this phase the court found as follows: "The plaintiff, upon learning of the falsity of the statements and representations in said application as aforesaid, tendered to the said Dan C. Hesselberg, on or about the 15th day of September, 1932, the sum of $311.42, the amount of the premiums with interest paid on said policy, and the plaintiff paid into court, upon the filing of its petition herein, the sum of $316.27 as a return to defendants of the premium with interest paid on said policy."

Appellants in the brief state their contention thus: "The plaintiff, by its own evidence, learned of the fact on which they are now asking cancellation on June 23, 1932, when proof of claim was made by the defendant (tr., pp. 45, 46, 47). The plaintiff did not offer to return the premiums until three months later, and did not file this suit until five months later."

■ The record does not show any premium payments after that date. Appellee was entitled to a reasonable period for investigation.

"Where an equitable estoppel is relied upon, the facts upon which it is based must be proved with particularity and precision, and nothing can be supplied by inference or intendment." Standard Sanitary Mfg. Co. v. Arrott (C. C. A. 8) 135 F. 750.

From this record we cannot say that such estoppel has been established.

Since the hearing of this appeal, we have had occasion to examine the case of

New York Life Ins. Co. v. Miller (C. C. A. 8) 73 F.(2d) 350, and the decisions of the Supreme Court in Adamos v. New York Life Insurance Co., 55 S. Ct. 315, 79 L. Ed. ——, and Enelow v. New York Life Ins. Co., 55 S. Ct. 310, 312, 79 L. Ed. ——, rendered January 7, 1935. These cases are readily distinguishable from that before us. In the Miller Case, in an action on life insurance policies, the insurer filed a cross-bill for fraud, alleging that the assured had obtained the policies by knowingly making false representations, consisting of untrue answers to questions propounded to him in his written application for the policies, and asked a decree of rescission. Its motion for trial on the equitable issues tendered by the cross-bill, before trial of the legal issues, was denied. The action on the policies was brought, and the cross-bill was filed within the contestable period. Such also was the situation in the Adamos and Enelow Cases. Respondent had filed affidavits of defense raising this same equitable issue, and asked that this equitable issue should be heard in advance of the trial by jury at law of any purely legal issues. The Supreme Court, reversing the decree of the Circuit Court of Appeals, held that this summary procedure would not lie "because the defense is one which is completely available in the action at law" seasonably brought within the contestable period.

In the opinion in the Enelow Case Mr. Chief Justice Hughes used this significant language: "The instant case is not one in which there is resort to equity for cancellation of the policy during the life of the insured and no opportunity exists to contest liability at law. Nor is it a case where, although death may have occurred, action has not been brought to recover upon the policy, and equitable relief is sought to protect the insurer against loss of its defense by the expiration of the period after which the policy by its terms is to become incontestable."

This states the distinction between the foregoing cases and that now under consideration. This action was brought by the insurer during the life of the insured and within the contestable period shortly thereafter to expire. No action had been brought to recover upon any provision of the policy. For the reasons stated, we conclude that the decree below should be affirmed, and it is so ordered.